# Exhibit 1

KeyCite Yellow Flag

Unconstitutional or Preempted  Prior Version Limited on Constitutional Grounds by  Porter v. Roosa,  S.D.Ohio,  Jan. 14, 2003

United States Code Annotated
   Title 28. Judiciary and Judicial Procedure (Refs & Annos)
      Part IV. Jurisdiction and Venue (Refs & Annos)
         Chapter 89. District Courts; Removal of Cases from State Courts (Refs & Annos)

28 U.S.C.A. § 1441

§ 1441. Removal of civil actions

Currentness

**(a) Generally.**--Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

**(b) Removal based on diversity of citizenship.--(1)** In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.

**(2)** A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

**(c) Joinder of Federal law claims and State law claims.--(1)** If a civil action includes--

   **(A)** a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and

   **(B)** a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute,

the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).

**(2)** Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1).

**(d) Actions against foreign States.**--Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury. Where removal is based upon this subsection, the time limitations of section 1446(b) of this chapter may be enlarged at any time for cause shown.

**(e) Multiparty, multiforum jurisdiction.**--**(1)** Notwithstanding the provisions of subsection (b) of this section, a defendant in a civil action in a State court may remove the action to the district court of the United States for the district and division embracing the place where the action is pending if--

**(A)** the action could have been brought in a United States district court under section 1369 of this title; or

**(B)** the defendant is a party to an action which is or could have been brought, in whole or in part, under section 1369 in a United States district court and arises from the same accident as the action in State court, even if the action to be removed could not have been brought in a district court as an original matter.

The removal of an action under this subsection shall be made in accordance with section 1446 of this title, except that a notice of removal may also be filed before trial of the action in State court within 30 days after the date on which the defendant first becomes a party to an action under section 1369 in a United States district court that arises from the same accident as the action in State court, or at a later time with leave of the district court.

**(2)** Whenever an action is removed under this subsection and the district court to which it is removed or transferred under section 1407(j)[1] has made a liability determination requiring further proceedings as to damages, the district court shall remand the action to the State court from which it had been removed for the determination of damages, unless the court finds that, for the convenience of parties and witnesses and in the interest of justice, the action should be retained for the determination of damages.

**(3)** Any remand under paragraph (2) shall not be effective until 60 days after the district court has issued an order determining liability and has certified its intention to remand the removed action for the determination of damages. An appeal with respect to the liability determination of the district court may be taken during that 60-day period to the court of appeals with appellate jurisdiction over the district court. In the event a party files such an appeal, the remand shall not be effective until the appeal has been finally disposed of. Once the remand has become effective, the liability determination shall not be subject to further review by appeal or otherwise.

**(4)** Any decision under this subsection concerning remand for the determination of damages shall not be reviewable by appeal or otherwise.

**(5)** An action removed under this subsection shall be deemed to be an action under section 1369 and an action in which jurisdiction is based on section 1369 of this title for purposes of this section and sections 1407, 1697, and 1785 of this title.

**(6)** Nothing in this subsection shall restrict the authority of the district court to transfer or dismiss an action on the ground of inconvenient forum.

**(f) Derivative removal jurisdiction.**--The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.

## CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 937; Pub.L. 94-583, § 6, Oct. 21, 1976, 90 Stat. 2898; Pub.L. 99-336, § 3(a), June 19, 1986, 100 Stat. 637; Pub.L. 100-702, Title X, § 1016(a), Nov. 19, 1988, 102 Stat. 4669; Pub.L. 101-650, Title III, § 312, Dec. 1, 1990, 104 Stat. 5114; Pub.L. 102-198, § 4, Dec. 9, 1991, 105 Stat. 1623; Pub.L. 107-273, Div. C, Title I, § 11020(b)(3), Nov. 2, 2002, 116 Stat. 1827; Pub.L. 112-63, Title I, § 103(a), Dec. 7, 2011, 125 Stat. 759.)

Notes of Decisions (3892)

**O'CONNOR'S CROSS REFERENCES**
**O'Connor's Federal Rules Civil Trials:**

See *O'Connor's Federal Rules*, "Removal & Remand," ch. 4-A, §1 et seq.

## Footnotes

1      So in original. Section 1407 of this title does not contain a subsec. (j).

28 U.S.C.A. § 1441, 28 USCA § 1441
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**WESTLAW**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 89. District Courts; Removal of Cases from State Courts (Refs & Annos)

28 U.S.C.A. § 1446

§ 1446. Procedure for removal of civil actions

Currentness

**(a) Generally.--**A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

**(b) Requirements; generally.--(1)** The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

**(2)(A)** When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.

**(B)** Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal.

**(C)** If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.

**(3)** Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

**(c) Requirements; removal based on diversity of citizenship.--(1)** A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

**(2)** If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that--

**(A)** the notice of removal may assert the amount in controversy if the initial pleading seeks--

**(i)** nonmonetary relief; or

**(ii)** a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

**(B)** removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

**(3)(A)** If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an "other paper" under subsection (b)(3).

**(B)** If the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).

**(d) Notice to adverse parties and State court.--**Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

**(e) Counterclaim in 337 proceeding.--**With respect to any counterclaim removed to a district court pursuant to section 337(c) of the Tariff Act of 1930, the district court shall resolve such counterclaim in the same manner as an original complaint under the Federal Rules of Civil Procedure, except that the payment of a filing fee shall not be required in such cases and the counterclaim shall relate back to the date of the original complaint in the proceeding before the International Trade Commission under section 337 of that Act.

**[(f) Redesignated (e)]**

**(g)** Where the civil action or criminal prosecution that is removable under section 1442(a) is a proceeding in which a judicial order for testimony or documents is sought or issued or sought to be enforced, the 30-day requirement of subsection (b) of this section and paragraph (1) of section 1455(b) is satisfied if the person or entity desiring to remove the proceeding files the notice of removal not later than 30 days after receiving, through service, notice of any such proceeding.

## CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 939; May 24, 1949, c. 139, § 83, 63 Stat. 101; Pub.L. 89-215, Sept. 29, 1965, 79 Stat. 887; Pub.L. 95-78, § 3, July 30, 1977, 91 Stat. 321; Pub.L. 100-702, Title X, § 1016(b), Nov. 19, 1988, 102 Stat. 4669; Pub.L. 102-198, § 10(a), Dec. 9, 1991, 105 Stat. 1626; Pub.L. 103-465, Title III, § 321(b)(2), Dec. 8, 1994, 108 Stat. 4946; Pub.L.

104-317, Title VI, § 603, Oct. 19, 1996, 110 Stat. 3857; Pub.L. 112-51, § 2(c), Nov. 9, 2011, 125 Stat. 545; Pub.L. 112-63, Title I, §§ 103(b), 104, Dec. 7, 2011, 125 Stat. 760, 762.)

Notes of Decisions (2365)

**O'CONNOR'S CROSS REFERENCES**
**O'Connor's Federal Rules Civil Trials:**

See ***O'Connor's Federal Rules***, "Removal & Remand," ch. 4-A, §1 et seq.

28 U.S.C.A. § 1446, 28 USCA § 1446
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

| | |
|---|---|
| **End of Document** | © 2025 Thomson Reuters. No claim to original U.S. Government Works. |

KeyCite Yellow Flag

Distinguished by   Wolf v. Bankers Life and Cas. Co.,   W.D.Mich.,
September 25, 2007

13 F.3d 940
United States Court of Appeals,
Sixth Circuit.

Leroy ALEXANDER, Plaintiff–Appellant,

v.

ELECTRONIC DATA SYSTEMS
CORPORATION; James Jeros; Steven
Brechtelsbauer; Jane Doe, Defendants–Appellees.

No. 92–1591.
|
Argued March 19, 1993.
|
Decided Jan. 6, 1994.

**Synopsis**

Rejected job applicant brought hiring discrimination suit
in state court. Defendants removed. The United States
District Court for the Eastern District of Michigan, Lawrence
P. Zatkoff, J., granted defendant's motion for summary
judgment. Appeal was taken. The Court of Appeals, Wellford,
Senior Circuit Judge, held that: (1) district court did not have
federal question jurisdiction, as required for removal, based
on general preemption provision of ERISA; (2) district court
did not have jurisdiction under provision of ERISA permitting
private enforcement suits; and (3) remand would be required
to determine if individually named employees of defendant
employer had been fraudulently joined to defeat diversity
jurisdiction.

Reversed and remanded.

**Procedural Posture(s):** Motion for Summary Judgment.

**Attorneys and Law Firms**

**\*941** James Schuster, Southfield, MI, Lynn H. Shecter
(argued & briefed), Roy, Shecter & Vocht, Birmingham, MI,
for Leroy Alexander.

Lee J. Hutton (argued), David A. Posner (briefed), Duvin,
Cahn, Barnard & Messerman, Cleveland, OH, Gail M.
O'Brien, Electronic Data Systems Corp., Southfield, MI,

Martin T. Wymer, Electronic Data Systems Corp., Dallas, TX,
for Electronic Data Systems Corp.

Gail M. O'Brien, Southfield, MI, for Jane Doe, Steven
Brechtelsbauer, James Jeros.

Before: MARTIN and SILER, Circuit Judges; and
WELLFORD, Senior Circuit Judge.

**Opinion**

WELLFORD, Senior Circuit Judge.

Plaintiff, Leroy Alexander, a Michigan resident, sued
defendant, Electronic Data Systems (EDS), a Texas
corporation, its manager, its personnel manager, and the
staffing manager of its Oakland County, Michigan facility
in a Michigan **\*\*2** state court. The suit, filed May 1,
1991, sought equitable and monetary relief, asserting that
EDS, a self-insured company, had wrongfully rejected the
plaintiff's September, 1989 application for a position as
systems engineer because he is a diabetic. [1]

[1]       Plaintiff asserted that this condition "did not affect
        his ability to do the job."

Alexander sought to represent a class of applicants
for positions at this EDS Michigan facility who were
"rejected because either they or members of their family
had preexisting medical conditions." Count I asserted
handicap discrimination under Michigan Compiled Laws §§
37.1101–37.1607 (1990). Specifically, in count I, Alexander
averred that his "handicap [diabetes] was unrelated to his
ability to do the job as systems engineer," and that EDS
"had offered Plaintiff Alexander the lower position [associate
systems engineer] in order to discourage him from applying
for work with EDS."

Count II alleged fraud and misrepresentation in that "EDS
represented to Plaintiff that he would be considered for
employment ..., required [him] to fill out [a] health history
questionnaire ... [and] strongly implied that the health history
questionnaire would be used only to determine the extent of
coverage once ... employed." The plaintiff claimed damages
for fraud and misrepresentation, because, as previously
claimed in the handicap discrimination count, defendants'
actions "deprived [him] of salary and benefits," because they
"did not intend to hire anyone with a preexisting medical
condition."

63 Empl. Prac. Dec. P 42,829, 17 Employee Benefits Cas. 2134, 2 A.D. Cases 1726...

Plaintiff asserted that "[t]he EDS recruiting team instructed the recruiter to offer Plaintiff Alexander a lower position, Associate Systems Engineer," and "Plaintiff Alexander accepted the lower position" and **\*\*3** "was told to report to work...." Later, Alexander says in the complaint that he was told "that he should not report to work." He then claimed that he "did not receive either the systems engineer job or any other position with EDS." Plaintiff's complaint may have been construed to assert that he was offered a job as associate systems engineer **\*942** and that he accepted this position, but was told, nevertheless, not to report to work and, therefore, did not receive any job with EDS because of his diabetic condition. Plaintiff's complaint did not mention any particular action taken or role played by Steven Brechtelsbauer, the alleged manager, by James Jeros, the alleged manager of staffing, or by "Jane Doe," the alleged personnel manager of EDS, but simply avers that "[d]efendants have engaged in unlawful employment practices." Plaintiff did not allege that any defendant other than EDS misrepresented the job situation to him. There is a complete absence of any specific averment of fraud on the part of any defendant.

Within thirty days, the defendants filed a notice of removal in the federal district court. Therein EDS stated that it was a Texas corporation (not, as incorrectly identified, a Delaware corporation). Brechtelsbauer and Jeros admit service of process on themselves and that they are Michigan residents. Both claim to be fraudulently joined in the suit "solely for the purpose of defeating ... jurisdiction" in the federal court, and claim that the complaint "fail[s] to assert ... any unlawful conduct" as to them.[2]

[2]    Jeros states that he did not direct the personnel services of EDS, as alleged, and was not in the recruiting department.

In the removal action, EDS claimed diversity of citizenship jurisdiction in the federal court and, in the alternative, that plaintiff's claimed causes of action " 'relate to' a plan covered by the Employment Retirement **\*\*4** Income Security Act" (ERISA), and "conflict directly with an ERISA cause of action," and therefore invoke federal question jurisdiction.

Within a few days, EDS filed an answer with affirmative defenses. It admitted that a team of systems engineers, including Brechtelsbauer, interviewed plaintiff. On June 21, after defendant EDS began discovery procedures upon plaintiff, Alexander moved to remand the case to state court. Plaintiff asserted that the defendants had the burden of proving fraudulent joinder and that the Michigan Handicappers Civil Rights Act permits suit against an individual or agent. In that motion, plaintiff claimed for the first time that Brechtelsbauer "acted as an agent for EDS by being part of the [EDS] management team that interviewed ... Plaintiff." Once again, plaintiff asserted that he accepted an offer of a "lower position." In addition, plaintiff asserted, for the first time, that Jeros was manager of staffing "and in that capacity directs personnel services."[3] In the motion for remand, plaintiff asserted flatly that he "was never employed by defendant," (without specifying which defendant) and thus was not an "employee" or a plan "participant."[4]

[3]    Plaintiff added that an "executive or manager who formulates or executes employment policies is a proper party."

[4]    Alexander also claimed in the remand action that ERISA does not preempt a state handicap discrimination claim.

The district court assumed jurisdiction upon the petition for removal based upon its finding that "plaintiff has ... alleged a cause of action which relates to an ERISA plan," and therefore determined the motion to remand to be "inappropriate" by reason of preemption. The district court subsequently dismissed the plaintiff's state law claim and granted the defendants' motion for summary judgment. The plaintiff now appeals, challenging jurisdiction and the decision on the merits. No class action certification was ever granted.

## **\*\*5 I. FEDERAL QUESTION JURISDICTION**

The initial uncertainty over whether Alexander was ever employed by EDS sparked considerable confusion regarding the district court's jurisdictional basis. In its petition for remand, EDS alleged diversity jurisdiction (based on a fraudulent joinder theory), or in the alternative, jurisdiction based on implied preemption under 29 U.S.C. § 1132 (ERISA's civil enforcement section) and also under 29 U.S.C. § 1144 (the express preemption provision).

The district court assumed jurisdiction upon the petition for removal based upon its finding that Alexander's action was expressly **\*943** preempted by § 1144. Specifically, the court found that the "plaintiff has ... alleged a cause of action which relates to an ERISA plan," and therefore

*Alexander v. Electronic Data Systems Corp.,* 13 F.3d 940 (1994)

63 Empl. Prac. Dec. P 42,829, 17 Employee Benefits Cas. 2134, 2 A.D. Cases 1726...

determined the motion to remand to be "inappropriate" by reason of preemption. Consequently, the district court declined to address the possibility of diversity jurisdiction based on fraudulent joinder.

The district court subsequently dismissed the plaintiff's state law claim and granted the defendants' motion for summary judgment. The plaintiff challenges the decision both as to jurisdiction and the merits. We disagree with the district court's stated basis for jurisdiction.

**A.** *Jurisdiction Founded Upon a* *§ 1144* *ERISA Preemption Defense*

Two different sections of ERISA are important in this preemption analysis. The civil enforcement section of ERISA is 29 U.S.C. § 1132. Under that section, anyone who qualifies as a "participant or beneficiary" of an employee benefit plan may sue under ERISA to enforce various rights conferred by ERISA. Section 1132 impliedly preempts actions brought in state court that could have been brought under ERISA's civil enforcement section. *See, e.g., Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 53–56, 107 S.Ct. 1549, 1556–58, 95 L.Ed.2d 39 (1987). Title 29, U.S.C. § 1144 is **\*\*6** ERISA's express preemption provision. That section preempts state laws insofar as they "relate to any employee benefit plan." 29 U.S.C. § 1144(a). Distinguishing between § 1132 preemption and § 1144 preemption is important when determining whether a preemption defense raises a federal question supporting federal jurisdiction. As already noted, the district court found federal jurisdiction based on its determination that § 1144 preempted Alexander's claim. We hold that jurisdiction based on § 1144 of ERISA was improper.

In its order denying Alexander's petition for remand, the district court assumed that a successful § 1144 preemption defense would create federal question jurisdiction. The only authority cited in the court's entire discussion of preemption and jurisdiction was *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). *Ingersoll–Rand,* however, did not address jurisdictional issues. The primary cases involving jurisdiction based on ERISA preemption are *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), and *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

In *Franchise Tax Board,* the Supreme Court restated the general rule regarding removal jurisdiction based on a preemption defense:

> [S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.

*Franchise Tax Board,* 463 U.S. at 14, 103 S.Ct. at 2848. Federal question jurisdiction exists whenever a claim "arise[s] under the ... laws ... of the United States." 28 U.S.C. § 1331. According to the Court, " '[b]y unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States **\*\*7** because prohibited thereby'." *Franchise Tax Board,* 463 U.S. at 12, 103 S.Ct. at 2848 (quoting *Gully v. First National Bank in Meridian,* 299 U.S. 109, 116, 57 S.Ct. 96, 99, 81 L.Ed. 70 (1936)).

The Court's hesitancy to find federal question jurisdiction premised on preemption appears partly motivated by respect for the well-pleaded complaint rule. The well-pleaded complaint rule generally provides that the plaintiff is the master of his complaint, and the fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action. *Franchise Tax Board,* 463 U.S. at 13, 22, 103 S.Ct. at 2848, 2852; *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). The well-pleaded complaint rule "has been correctly understood to apply, even in cases in which neither the obligation created by state law nor the defendant's factual failure to comply **\*944** are in dispute, and both parties admit that the only question for decision is raised by a federal pre-emption defense." *Franchise Tax Board,* 463 U.S. at 12, 103 S.Ct. at 2848 (stating that "the party who brings a suit is master to decide what law he will rely upon").

A special corollary to the well-pleaded complaint rule provides that federal question jurisdiction exists when the plaintiff's claim occurs in an area of the law which Congress

Case 2:25-cv-13037-BRM-APP ECF No. 12-1, PageID.309 Filed 10/10/25 Page 11 of 36

Alexander v. Electronic Data Systems Corp., 13 F.3d 940 (1994)

63 Empl. Prac. Dec. P 42,829, 17 Employee Benefits Cas. 2134, 2 A.D. Cases 1726...

has so completely preempted that any complaint raising a claim in that area necessarily presents a federal issue. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In *Metropolitan Life,* the Supreme Court applied the corollary to a claim that could have been brought under the civil enforcement section of ERISA. As a result, the Court held that the plaintiff's claim was removable to federal court *based on a § 1132 preemption defense* notwithstanding the absence of a federal issue on the face of the complaint.

EDS urges us to interpret *Metropolitan Life* as conferring federal question jurisdiction whenever an ERISA preemption defense is raised, regardless of **\*8** whether the defense is premised on § 1132, § 1144, or some other section. We decline to make such a broad interpretation of *Metropolitan Life.*

The plaintiff in *Metropolitan Life* was a terminated employee who sued for wrongful termination, breach of contract and retaliatory discharge. One of the claims in that case demanded reinstatement of "all benefits and insurance coverages Plaintiff is entitled to." *Metropolitan Life,* 481 U.S. at 61, 107 S.Ct. at 1545. Because Taylor was a former employee of the defendant, he was a "beneficiary" under ERISA, and could have brought his claim for benefits under ERISA's civil enforcement section, § 1132. The defendant removed the case to federal court based on the § 1132 defense, and the district court accepted pendent jurisdiction over the non-benefit-related claims. *Id.*

While discussing *Franchise Tax Board,* the Court, in *Metropolitan Life,* acknowledged that even ERISA preemption defenses do not generally create federal question jurisdiction. Specifically, the Court noted that, "[i]n *Franchise Tax Board,* the Court held that ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." *Metropolitan Life,* 481 U.S. at 64, 107 S.Ct. at 1546.

After recognizing that Taylor's action was likely preempted under both § 1144 (the express preemption provision), and § 1132 (the civil enforcement section), the Court focused on the congressional intent surrounding § 1132. The Court noted striking similarities between § 1132 of ERISA, and § 301 of the Labor Management Relations Act (LMRA), and pointed to a Conference Report on ERISA describing the civil enforcement provisions of § 502(a) (29 U.S.C. § 1132) regarding the removability of actions that could have been

brought under § 1132. *Metropolitan Life,* 481 U.S. at 65–66, 107 S.Ct. at 1547–48. That Conference Report instructed that:

> [W]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the **\*9** plan which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. *All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947.* H.R.Conf.Rep. No. 93–1280, p. 327 (1974).

*Id.* at 65–66, 107 S.Ct. at 1547–1548 (emphasis supplied by the Court). [5] Based on that congressional pronouncement, the Court found that Taylor's action was removable. We interpret the Court's decision as only a **\*945** modest encroachment upon the well-pleaded complaint rule:

[5]
> Until the *Metropolitan Life* decision in 1987, the only statute to which this corollary (allowing removal based on preemption despite the well-pleaded complaint rule) applied was § 301 of the LMRA. *Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. at 1546–47; *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

Taylor argues strenuously that this action cannot be removed to federal court because it was not "obvious" at the time he filed suit that his common law action was both pre-empted by ... § 1144(a), and also displaced by the civil enforcement provisions of [§ 1132(a) ].... But the touchstone of the federal district court's removal jurisdiction is not the "obviousness" of the pre-emption defense but the intent of Congress. Indeed, as we have noted, even an "obvious" pre-emption defense does not, in most cases, create removal jurisdiction. In this case, however, Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement

provisions of [§ 1132] removable to federal court. Since we have found Taylor's cause of action to be within the scope of [§ 1132(a) ], we must honor that intent whether preemption was obvious or not at the time this suit was filed.

*Id.* 481 U.S. at 66, 107 S.Ct. at 1547.

**\*\*10** As the concurrence made clear, the crucial congressional intent was to allow *removal,* not merely the intent to preempt. The concurrence noted:

> [O]ur decision should not be interpreted as adopting a broad rule that *any* defense premised on congressional intent to preempt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, "Congress has *clearly* manifested an intent to make causes of action ... *removable to federal court.*"

*Metropolitan Life,* 481 U.S. at 67–68, 107 S.Ct. at 1548 (Brennan, J., concurring) (emphasis in original).

In *Metropolitan Life,* the Court clearly found that *an § 1132 preemption defense* confers federal question jurisdiction. *Id.* at 67. The Court was silent, however, about § 1144. We find it telling that the Court in *Metropolitan Life* had the opportunity to find federal jurisdiction based on a § 1144 defense, but declined to do so, instead relying on specific congressional intent relating only to § 1132. Because *Metropolitan Life* only found clear congressional intent to allow removal of actions implicating § 1132, we do not interpret it as directly authorizing the removal of Alexander's action to federal court.

Additionally, we do not believe that *Metropolitan Life* implicitly authorizes removal of actions that are possibly preempted under § 1144. The parties have not highlighted and we have found no clear congressional intent to allow removal of actions that potentially relate to employee benefit plans analogous to the congressional intent clearly manifested in the Conference Report regarding ERISA's civil enforcement section. Moreover, we find instructive the Supreme Court's careful protection of the well-pleaded complaint rule, and its hesitancy to allow removal based on a preemption defense.

**\*\*11** Consequently, we believe that a defense premised on § 1132 preemption creates federal question jurisdiction, but that one based on § 1144 preemption does not. [6] Therefore, the district court erred by taking jurisdiction founded on EDS' § 1144 preemption defense. [7]

[6]

We recognize that our interpretation of *Metropolitan Life* is not in accord with interpretations of that case by some other courts. *See, e.g., Shiffler v. Equitable Life Assur. Soc.,* 838 F.2d 78, 81–82 (3d Cir.1988) (implying that a meritorious § 1144 defense would confer federal question jurisdiction); *Bennett v. Hallmark Cards Inc.,* No. 92–1073–CV–W–6, 1993 WL 327842 (W.D.Mo., Aug. 17, 1993); *Floerchinger v. Intellicall, Inc.,* 802 F.Supp. 1480 (N.D.Tex.1992); *Czechowski v. Tandy Corp.,* 731 F.Supp. 406 (N.D.Cal.1990).

We also recognize another class of cases involving employer complaints seeking a declaratory judgment regarding obligations under ERISA. In such a context, the possibility of § 1144 preemption appears on the face of the plaintiff's complaint and may result in federal question jurisdiction based on the well-pleaded complaint rule. *See, Northeast Dept. ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147 (3d Cir.1985). We conclude that this has no application here.

[7]

Even if a § 1144 preemption defense did confer federal jurisdiction, we have serious doubts whether Alexander's action would be preempted under that section. The district court cited only *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), as authority for deeming ERISA preemption sufficiently broad to foreclose a claim in state court that the defendant "employer allegedly refrains from hiring an employee due to possible economic detriment on an employee benefit plan." *Ingersoll–Rand,* however, involved a wrongful discharge claim of a long-term employee, and the "existence of a pension plan [wa]s a critical factor in establishing liability under the State's wrongful discharge law." *Id.* at 139–40, 111 S.Ct. at 482–83. In *Ingersoll–Rand,* the Court specifically noted: "[w]e are not dealing here with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Id.* at 139, 111 S.Ct. at 482. The Michigan statute relied upon by Alexander in his complaint under "handicap discrimination" was MCL §§ 37.1101–37.1607, which is such a generally applicable Michigan statute that functions apart from any ERISA plan.

We are not persuaded that *Ingersoll–Rand* is controlling under the different facts of this case. Here, we examine the claim of a *non-employee* who claims handicap discrimination and "fraud and misrepresentation," in contrast to McClendon's suit for loss of long-term *employee* benefits.

**\*946   \*\*12 B.** *Jurisdiction Founded on a* § 1132 *ERISA Preemption Defense*

In its opinion granting summary judgment to EDS, the district court noted an additional jurisdictional basis. [8] The court reasoned that Alexander's complaint alleged facts which, if true, would subject his claims to preemption under § 1132. Because a § 1132 preemption defense raises a federal question supporting jurisdiction, the district court found jurisdiction proper under *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. at 1542 (1987). *Alexander v. EDS,* No. 91–CV–72494–DT, slip op. at 4 n. 12 (E.D.Mich.1991). In *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1229 (6th Cir.1991), *cert. dismissed,* 505 U.S. 1233, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992), this court held that jurisdiction on this basis is unfounded. At best, it is unclear as to whether Alexander's complaint alleges that he was ever an employee of EDS. His complaint alleges that he was "offer[ed] ... a lower position" and "Alexander accepted the lower position." Three sentences later, however, Alexander's complaint alleges that "Plaintiff Alexander did not receive either the systems engineer job or any other position with EDS."

[8]  In the denial of Alexander's motion to remand, the court found jurisdiction proper because Alexander's claims "related to" an employee benefit plan. Thus, the court believed it had jurisdiction because it believed that EDS' § 1144 preemption defense was valid.

As previously noted, § 1132 preempts state claims by "participants or beneficiaries" to enforce certain rights guaranteed by ERISA. Claims by anyone other than a "participant or beneficiary," however, fall outside the scope of ERISA's civil enforcement section. The district court determined that it was entitled to rely on the allegations in Alexander's complaint when determining his status as a "participant" or "beneficiary." *Alexander,* slip op. at 6 n. 14. Because Alexander's complaint could be construed as alleging that Alexander was offered employment by EDS, (and was therefore a potential "participant" in the plan), the court concluded that EDS' \*\*13 § 1132 preemption defense was apparently valid at the time the petition for remand was

filed, and that the court had federal jurisdiction pursuant to that defense. We do not reach this same conclusion.

The "majority" decision in *Cromwell v. Equicor–Equitable HCA Corp.* held that a district court must "look to the *complaint* as it existed *at the time the petition for removal was filed* to determine" the matter of federal jurisdiction raised by the defendant's notice of removal. 944 F.2d at 1277 (emphasis added). [9] Both the "concurring" and "dissenting" opinions, however, held that the district court must "make an independent inquiry at the outset to determine whether the plaintiff is a 'participant' ... within the meaning of ERISA, before it turns to the issue of preemption." *Id.* at 1279 (Suhrheinrich, J., concurring). The district court seemed to imply that, with regard to removal jurisdiction, it "could" or "should" rely on the plaintiff's "allegations, as set forth in his complaint, that he accepted employment with EDS." J/A 37, n. 14.

[9]  The defendant's notice claimed alternative bases for removal: (1) diversity jurisdiction based upon fraudulent joinder of individual defendants, and (2) federal question jurisdiction under ERISA (preemption).

In the plaintiff's motion to remand, he stated:

Plaintiff alleges that individual defendant Steven Brechtelsbauer acted as an **\*947** agent of EDS by being part of the management team that interviewed and denied Plaintiff employment. Mr. Brechtelsbauer was part of the management team that interviewed Plaintiff. Complaint paragraph 16. The team instructed the Recruiter to offer a lower position to Plaintiff. Complaint paragraph 17. The purpose of the lower offer was to discourage Plaintiff from applying for work with EDS. Complaint paragraph 36. Plaintiff accepted. Complaint paragraph 18. He did not receive either position.

**\*\*14** Complaint paragraph 21. These actions were in violation of the Michigan Handicappers' Civil Rights Act. Complaint paragraphs 33, 34 and 37.

....

Defendant alleges in paragraph 12 of its removal petition that because plaintiff pleads that he accepted the alleged employment offer, he is "participant" [sic] in an employee benefit plan. Defendant's position is frivolous because plaintiff was *never employed by defendant.*

Alexander v. Electronic Data Systems Corp., 13 F.3d 940 (1994)

63 Empl. Prac. Dec. P 42,829, 17 Employee Benefits Cas. 2134, 2 A.D. Cases 1726...

J/A 52, 53 (emphasis added).

The plaintiff added, in his motion to remand, that to be a "participant" he had to be "actually employed" or a "former 'employee'," citing ERISA provisions and *Coleman v. General Electric Co.,* 643 F.Supp. 1229, 1235 (E.D.Tenn.1986), *aff'd,* 822 F.2d 59 (6th Cir.1987).

We believe that at this juncture an "independent inquiry" by the district court, based upon the pleadings, including the notice of removal and motion to remand, would have made it clear to the district court that the plaintiff had, in effect, abandoned any potential claim to benefits or damages under the ERISA plan, which he conceded applied only to "participants." In point No. 9 of the motion to remand, the plaintiff made it clear that he was *never* an employee or a participant, and he made no claim to be a "beneficiary" under the ERISA plan. We construe the plaintiff's action, as described above, in the motion to remand as an effectual amendment or clarification with respect to disclaiming any rights as an actual or former EDS employee. The district court's appropriate inquiry into, or examination of, the plaintiff's status at this point would have made it clear that Alexander claimed and had no standing to pursue an ERISA cause of action. "ERISA was enacted 'to promote the interests of employees and their beneficiaries in **\*\*15** employee benefit plans.' *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983)" (quoted in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989)).

We believe that since the plaintiff waived or dropped, as a matter of clarification, any claim as "participant" or "employee," the district court failed to consider his lack of standing to assert any claim under ERISA at the time the issues were drawn on the question of remand to the state court. We hold that the district court erred and acted prematurely in dismissing the plaintiff's state law claims and in granting the defendants' summary judgment on the federal question and preemption issue. Had the proper inquiry under *Cromwell* been made, it would have been clear that Alexander lacked standing to sue under ERISA (because he was never an employee) and that EDS' § 1132 ERISA preemption defense was misplaced (for the same reason). The district court should then have examined the question of jurisdiction by reason of diversity and alleged fraudulent joinder.

## II. DIVERSITY JURISDICTION

Title 28, U.S.C. § 1441(b), provides:

> Any civil action of which the districts courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

The jurisdictional question in this case is whether "Jane Doe," James Jeros and Steven Brechtelsbauer, or any of them, were "parties in interest properly joined ... as defendants." If not, complete diversity existed **\*948** and EDS had a right to remove this case to federal court based upon diversity of citizenship.

## **\*\*16** A. *JANE DOE*

According to the statute governing removal:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

Case 2:25-cv-13037-BRM-APP ECF No. 12-1, PageID.313 Filed 10/10/25 Page 15 of 36

Alexander v. Electronic Data Systems Corp., 13 F.3d 940 (1994)

63 Empl. Prac. Dec. P 42,829, 17 Employee Benefits Cas. 2134, 2 A.D. Cases 1726...

28 U.S.C. § 1441(a).

It is clear that "Jane Doe" is a fictitious name; no such real person was ever named, and plaintiff never identified the alleged person who was "EDS' Personnel Manager in Michigan in [sic] within the time period covered." Section 1441(a) compels that this "named" defendant be disregarded for purposes of diversity jurisdiction.

### B. *JAMES JEROS*

The complaint refers to this named individual defendant as a Michigan resident, and "EDS' Manager of Staffing in Oakland County [who,] in that capacity directs personnel services...." He is not thereafter named, nor is there further reference in the complaint to the "Manager of Staffing" or the director of "personnel services." The Michigan Handicappers Civil Rights Act protects handicapped persons in public accommodation, housing, and in employment. That part of the Act which relates to employment opportunities makes certain described discriminatory actions by employers unlawful. It is evident that EDS and not James Jeros is *the employer* in this case.

**17** Count II of the complaint is labeled "fraud and misrepresentation." Count II, paragraphs 42 through 49, inclusive, refer to requirements upon and representations to plaintiff by EDS alone. Nowhere does the plaintiff mention any specific representation by Jeros (or Brechtelsbauer) made to him.

In addressing the sufficiency of pleadings, we must look to state law. In Michigan, "an action in fraud must definitely and issuably set forth the facts complained of and relied upon for recovery." *Dutkiewicz v. Bartkowiak,* 372 Mich. 386, 126 N.W.2d 705, 706 (1964). "A mere allegation or claim of fraud is not sufficient to establish a cause of action based thereon." *Hager v. Hager,* 372 Mich. 288, 125 N.W.2d 865, 867 (1964).[10]

[10] "A declaration or other pleading setting up fraud as a basis for recovery of damages must clearly and distinctly allege all of the essential elements of actionable fraud." 37 C.J.S. *Fraud, § 81, p. 374.*

### C. *STEPHEN BRECHTELSBAUER*

What has been stated as to defendant Jeros applies fully on the count II claims of fraud and misrepresentation against defendant Brechtelsbauer. The question with regard to Brechtelsbauer then becomes: has the plaintiff properly joined him as a defendant, or can the defendants establish that he (and Jeros) were fraudulently joined to defeat federal jurisdiction?

We call to the attention of the district court a case dealing with a situation analogous to the facts of this case, *Fletcher v. Advo Systems, Inc.,* 616 F.Supp. 1511 (E.D.Mich.1985). In *Fletcher,* plaintiff James Fletcher filed suit in Michigan state court alleging wrongful termination and naming as defendants Fletcher's corporate employer, a vice president, and Fletcher's immediate supervisor who, like Fletcher, was a Michigan resident. The defendants removed the case to federal court, claiming that the Michigan resident supervisor had been joined **18** "*solely* to defeat diversity of citizenship." *Id.* at 1512 (emphasis added). As in the instant case, the plaintiff moved for remand to the Michigan state court. The plaintiff's motion was denied, *id.* at 1515, finding that the supervisor was joined for the sole purpose of defeating federal jurisdiction.

The burden to establish federal jurisdiction in this case is clearly upon the **949** defendants as the removing party. *Gafford v. General Electric Co.,* 997 F.2d 150, 155 (6th Cir.1993); Charles A. Wright, Arthur A. Miller, et al., *Federal Practice and Procedure,* Vol. 14A, § 3721 (1985). The removing party bears the burden of demonstrating fraudulent joinder. *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit,* 874 F.2d 332, 330 (6th Cir.1989). Removal statutes, moreover, are strictly construed. *Wilson v. U.S. Dept. of Agriculture,* 584 F.2d 137, 142 (6th Cir.1978).

There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law.... One or the other at least would be required before it could be said that there was no real intention to get a joint judgment, and

Alexander v. Electronic Data Systems Corp., 13 F.3d 940 (1994)

63 Empl. Prac. Dec. P 42,829, 17 Employee Benefits Cas. 2134, 2 A.D. Cases 1726...

that there was no colorable ground for so claiming.

*Bobby Jones Garden Apartments, Inc. v. Suleski,* 391 F.2d 172, 176 (5th Cir.1968). Therefore "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Id.* That same circuit restated the question as whether there was any "reasonable basis for predicting that [the plaintiff] could prevail." *Teddler v. F.M.C. Corp.,* 590 F.2d 115, 117 (5th Cir.1979).

Plaintiff relies on *Jenkins v. American Red Cross,* 141 Mich.App. 785, 369 N.W.2d 223 (1985), to support his joinder of Jeros and Brechtelsbauer as officials of the defendant employer. In that case, Jenkins, a long-time black employee, sued under the Elliott–Larsen Civil **\*\*19** Rights Act for race discrimination, claiming a discriminatory discharge. Jenkins charged intimate involvement in his allegedly discriminatory termination by an immediate supervisor and the director of the Red Cross office. The district court, on remand, must determine if Brechtelsbauer and Jeros are within the definition of employer/agent under the Michigan Handicappers' Civil Rights Act and *Jenkins.*

"[A]ny disputed questions and fact and ambiguities in the *controlling* state law [should be resolved] ... in favor of the nonremoving party." *Carriere v. Sears Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.), *cert. denied,* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990) (emphasis added). See also *Kruso*

*v. International Telephone & Telegraph Corp.,* 872 F.2d 1416, 1426 (9th Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990), stating:

[N]one of the individual defendants are alleged to have done anything wrongful except to cause the corporate defendants to act in an allegedly wrongful manner. The alleged wrongs of which plaintiffs complain are all corporate wrongs. Plaintiffs do not and apparently cannot allege that any of the individual defendants owed them any duty in their individual capacity, nor that they did any act in their individual capacity which violated any such duty or otherwise caused plaintiffs harm except as a result of corporate acts.

We **REVERSE** and **REMAND** this case, accordingly, for a determination of diversity jurisdiction, specifically whether defendants Jeros and Brechtelsbauer were fraudulently joined.

### All Citations

13 F.3d 940, 63 Empl. Prac. Dec. P 42,829, 17 Employee Benefits Cas. 2134, 2 A.D. Cases 1726, 4 NDLR P 413, 1994 Fed.App. 0002P, Pens. Plan Guide (CCH) P 23898E

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2006 Fed.App. 0341P

KeyCite Yellow Flag

Distinguished by   Maher v. Federated Service Insurance Company,   6th Cir. (Mich.),   November 17, 2016

462 F.3d 536

United States Court of Appeals,
Sixth Circuit.

Floyd CURRY, Plaintiff–Appellant,

v.

U.S. BULK TRANSPORT, INC.

et al., Defendants–Appellees.

No. 05–4218.
|
Argued: July 28, 2006.
|
Decided and Filed: Sept. 5, 2006.
|
Rehearing and Rehearing En Banc Denied Dec. 5, 2006.

**Synopsis**

**Background:** Ohio warehouse manager, who was injured when truck carrying potassium sulfate overturned in warehouse, filed state court action against Pennsylvania corporation that leased truck, as well as four John Doe defendants, which included truck driver, truck driving company, truck owner, and loading company. Corporation removed action to federal court, invoking diversity jurisdiction. The United States District Court for the Northern District of Ohio, Donald C. Nugent, J., entered summary judgment in favor of defendants, and manager appealed.

**Holdings:** The Court of Appeals, Karen Nelson Moore, Circuit Judge, held that:

although complete diversity existed between identified parties, substitution of Ohio residents for two John Doe defendants in the complaint destroyed diversity and, thus, district court's subject-matter jurisdiction, and

Court of Appeals would not cure the lack of subject-matter jurisdiction retroactively by dismissing nondiverse defendants.

Remanded with instructions.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

**Attorneys and Law Firms**

**\*537 ARGUED:** L. Christopher Coleman, Steuer, Escovar, Berk & Brown, Cleveland, Ohio, for Appellant. John B. Stalzer, Reminger & Reminger, Cleveland, Ohio, for Appellees. **ON BRIEF:** L. Christopher Coleman, Steuer, Escovar, Berk & Brown, Cleveland, Ohio, for Appellant. John B. Stalzer, Brian D. Sullivan, Frank Leonetti III, Reminger & Reminger, Cleveland, Ohio, for Appellees.

Before: MOORE and GIBBONS, Circuit Judges; ACKERMAN, District Judge. [*]

**OPINION**

KAREN NELSON MOORE, Circuit Judge.

Plaintiff–Appellant Floyd Curry brought this suit to recover damages resulting from injuries he sustained in an accident when a truck carrying potassium sulfate overturned in the warehouse in which Curry worked. Curry alleges that Defendants–Appellees U.S. Bulk Transport, Inc., David Priddy, and Eric Susman negligently operated and covered the truck, thereby causing his injuries. The district court granted summary judgment to defendants, finding that Curry had not provided any evidence that defendants were negligent. Curry appeals, arguing that genuine issues of material fact preclude summary judgment. During review of our jurisdiction to hear this appeal, it became apparent that complete diversity was destroyed when Priddy and Susman were identified and substituted as nondiverse defendants, with the result that the district court lacked subject-matter jurisdiction over this suit. We therefore **REMAND** Curry's lawsuit to the district court with instructions to remand to the state court from which removal was granted.

**I. BACKGROUND**

The following facts are undisputed. On April 3, 2002, Plaintiff–Appellant Curry **\*538** was on the job as a warehouse manager at American Metal Chemical Corporation in Medina, Ohio. Joint Appendix ("J.A.") at 36 (Fourth Amd. Compl. at 2); J.A. at 96 (Curry Dep. at 17). Curry was in charge of inventory at the warehouse, and it was

2006 Fed.App. 0341P

his job to direct incoming trucks making deliveries and to show the drivers where in the warehouse incoming truck loads should be dumped. On that morning, Defendant–Appellee Priddy arrived at the warehouse driving a Freightliner truck loaded with potassium sulfate. Defendant–Appellee Susman owned the truck that Priddy was driving, and Defendant–Appellee U.S. Bulk Transport was the lessee of the truck.

When Priddy pulled the truck into the warehouse that day, Curry directed Priddy to dump the potassium sulfate in the area of the warehouse designated for raw materials. While Priddy was in the truck's driver's seat, Curry stood behind the truck and directed Priddy to raise the truck bed and dump the material. Curry observed that after Priddy raised the truck bed, a significant quantity of the potassium sulfate in the truck adhered to the truck's bed instead of falling out of the truck. When gravity failed to dislodge the adhering material, Curry moved to the side of the truck so that he could approach Priddy to tell him that the material was stuck to the truck. Curry incorrectly believed that the truck was equipped with a vibrator that could be used to shake a load loose, and so Curry intended to tell Priddy to vibrate the truck bed so the material would fall out. While Curry was beside the truck, he "heard metal under stress," and looked up to see that the truck bed was falling over towards him. J.A. at 97 (Curry Dep. at 18). Curry scrambled to get out of the way of the falling bed, and ran towards the back of the truck. Curry escaped from the path of the falling truck bed, but stumbled over some chunks of potassium sulfate that had fallen from the load and fell on his knee and elbows, sustaining injuries that required surgery.

Curry filed suit in the Court of Common Pleas for Cuyahoga County, Ohio, in April 2004, naming U.S. Bulk Transport[1] as well as four John Doe defendants (the truck driver, the truck driving company, the truck owner, and the loading company, all of whose names were then unknown to Curry) and alleging three counts of negligence. J.A. at 10–15 (Amd.Compl.). U.S. Bulk Transport filed a notice of removal in the United States District Court for the Northern District of Ohio on July 20, 2004, invoking diversity jurisdiction. Diversity exists between Curry and U.S. Bulk Transport, because Curry is a citizen of Ohio, and U.S. Bulk Transport is a Pennsylvania corporation with its principal place of business in Pennsylvania. J.A. at 7 (Notice of Removal). In January 2005, the district court granted Curry's motion to file a third amended complaint, which identified and added Priddy and Susman, both citizens of Ohio, as defendants in place of two previous John Doe defendants. J.A. at 27–28 (Third Amd. Compl. at 2–3). Neither party filed a motion to remand to state

court for lack of complete diversity or took any other steps to notify the district court of the potential problem of subject-matter jurisdiction.

Defendants moved for summary judgment on May 20, 2005, but the following month the parties filed a joint motion for an extension of the deadline for filing Curry's brief in opposition to summary judgment so that the parties could proceed **\*539** with discovery. Curry filed his opposition to defendants' summary-judgment motion on August 1, 2005. Defendants filed a reply to Curry's opposition motion on August 5, 2005. On August 18, 2005, Curry filed a motion for leave to file a fourth amended complaint, which the court granted on August 23, 2005. Dist. Ct. Docket at R.29. Curry's fourth amended complaint removed the remaining John Doe defendants and also eliminated the third count of his complaint, leaving only Count 1 (negligent operation of the truck during dumping) and Count 2 (negligent loading and tarping of the load). J.A. at 35 (Fourth Amd. Compl.). On August 26, 2005, the district court granted summary judgment to the three defendants on both counts, concluding that there was "absolutely no evidence whatsoever that any [of] the Defendants were negligent in operating or maintaining the vehicle," and that Curry had not produced any evidence that Priddy's use of a tarp to cover the potassium sulfate was negligent. J.A. at 47–48 (Dist. Ct. Mem. Op. at 9–10). Curry filed a timely notice of appeal.

## II. ANALYSIS

After U.S. Bulk Transport filed a notice of removal, the district court assumed diversity jurisdiction over this case under 28 U.S.C. § 1332. At that time, the only defendant identified by name in Curry's first amended complaint was U.S. Bulk Transport. The remaining defendants were merely identified as John Does, and their citizenship was unknown. Curry is a citizen of Ohio, and U.S. Bulk Transport is a citizen of Pennsylvania, as it is a Pennsylvania corporation with its principal place of business in Pennsylvania. J.A. at 7 (Notice of Removal). There is no question, therefore, that at the moment of removal, complete diversity existed between the identified parties, and the district court properly exercised diversity jurisdiction. *See Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir.1999) ("In order for a defendant to remove a case to federal court based upon diversity jurisdiction, there must be complete diversity of citizenship both at the time that the case is commenced and at the time that the notice of removal is filed.").

In January 2005, however, the district court granted Curry's motion to file a third amended complaint. This amended complaint added Priddy and Susman as nondiverse defendants, as both men, like Curry, are citizens of Ohio. J.A. at 27–29 (Third Amd. Compl. at 1–3). Curry explained at oral argument that he did not learn the identities of Priddy and Susman until discovery, and defendants agreed and conceded that there was no improper motive on Curry's behalf regarding this delay in identifying the parties. Yet upon the substitution of Priddy and Susman for two John Doe defendants in the complaint and the realization that there were then Ohio citizens on both sides of the lawsuit, neither party raised before the district court the issue of whether the district court's diversity jurisdiction remained valid, and the court failed to reconsider its subject-matter jurisdiction *sua sponte.* [2] *See Owens v. Brock,* 860 F.2d 1363, 1367 (6th Cir.1988) ("[D]efects in subject matter jurisdiction cannot be waived by the parties and may be addressed by a court on its own motion at any stage of the proceedings."). Upon review, we conclude that the district court should have dismissed **\*540** the case for lack of subject-matter jurisdiction upon granting Curry's motion to amend the complaint to include Priddy and Susman.

"Diversity of citizenship, the basis for jurisdiction in the present case, exists only when no plaintiff and no defendant are citizens of the same state." *Jerome–Duncan, Inc.,* 176 F.3d at 907. The general rule is that diversity is determined at the time of the filing of a lawsuit. *See Smith v. Sperling,* 354 U.S. 91, 93 & n. 1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). Notwithstanding this general rule, persuasive authority counsels that in a situation such as this where an amended complaint is filed to include the identity of a previous unidentified defendant, diversity must be determined at the time of the filing of the amended complaint. As the leading civil procedure treatise explains:

> Although jurisdiction will not be ousted by a subsequent change in parties who are ancillary to the suit and whose presence ... is not essential to an adjudication on the merits, a change in parties that goes to the very essence of the district court's ability to adjudicate the merits of the dispute effectively—most notably the addition of indispensable parties—may destroy

it. The cases indicate that the court will take account of whether the plaintiff has been dilatory or is trying to destroy diversity, whether the plaintiff will be significantly disadvantaged if the amendment is not allowed, and whether remanding the action to the state court will prejudice the defendant.

14B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3723 (3d ed.1998). *See also Amer. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP,* 362 F.3d 136, 141–42 (1st Cir.2004) (holding that the introduction of a nondiverse defendant in place of a diverse defendant in an amended complaint destroyed diversity and the court's jurisdictional basis) [3] ; *Casas Office Mach., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668, 674 (1st Cir.1994) ("Congress has indicated that federal diversity jurisdiction is defeated so long as, after removal, fictitious defendants are replaced with nondiverse, named defendants, regardless of whether they happen to be dispensable or indispensable to the action."); *Fiedler v. Reliance Elec. Co.,* 823 F.2d 269, 270–71 (8th Cir.1987) (noting district court's dismissal of case involving destruction of diversity after determination that nondiverse defendant was a proper party to add to the litigation); *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010–11 (3d. Cir.1987) ("[W]hen a nondiverse party is added to a federal proceeding and that party's presence is indispensable to the furnishing of complete relief, remand is mandated where federal subject matter jurisdiction depends on diversity jurisdiction, even though removal was originally proper."); *Duchon v. Cajon Co.,* 791 F.2d 43, 47 n. 2 (6th Cir.1986) (stating that "the lack of complete diversity among the parties under [the plaintiff's] proposed amended complaint would not in itself be fatal" where "there is an independent basis of federal jurisdiction over the non-diverse **\*541** defendant"); *cf. Cox v. Mayer,* 332 F.3d 422, 429–30 (6th Cir.2003) (Moore, J., dissenting) (stating that the filing of a supplemental pleading "becomes the relevant pleading for purposes of determining diversity") (citing *Grady v. Irvine,* 254 F.2d 224, 228 (4th Cir.1958)).

In *Casas Office Machines,* the First Circuit faced a nearly identical scenario to the instant case, and concluded that the identification of nondiverse "John Doe" defendants after removal destroyed subject-matter jurisdiction. Casas, the

plaintiff in that suit, had originally filed suit in the Superior Court of Puerto Rico against Mita and two "John Doe" defendants. *Casas Office Mach.,* 42 F.3d at 670. After Mita removed the case to the United States District Court for the District of Puerto Rico, Casas filed an amended complaint identifying the two fictitious defendants which, like Casas, were Puerto Rico corporations. Despite the destruction of complete diversity, the parties did not move to remand to state court and the district court failed to dismiss sua sponte, but rather proceeded to adjudicate the dispute on the merits. When appealing the district court's unfavorable judgment, Mita raised the lack of diversity jurisdiction for the first time before the First Circuit.

Relying upon 28 U.S.C. § 1447(e), the First Circuit concluded that "diversity jurisdiction was lost in the present case when the [district] court allowed Casas to identify the fictitious [nondiverse] defendants," and that the district court erred when it allowed Casas to "substitute the nondiverse, named defendants for the fictitious defendants—thereby defeating federal diversity jurisdiction—and then continue to deal with the merits of the dispute." *Id.* at 675. Title 28 U.S.C. § 1447(e) provides, "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." The First Circuit reasoned that "[a]lthough this provision relates expressly to joinder, the legislative history to the Judicial Improvements and Access to Justice Act of 1988 indicates that § 1447(e) applies also to the identification of fictitious defendants after removal." *Casas Office Mach.,* 42 F.3d at 674 (citing H.R.Rep. No. 100–889, at 73 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6033 ("Th[e] provision also helps to identify the consequences that may follow removal of a case with unidentified fictitious defendants.") (alteration in original)). We find the First Circuit's application of § 1447(e) to these circumstances to be persuasive. Upon the order granting Curry's motion to amend his complaint to identify Priddy and Susman and add them as nondiverse defendants, complete diversity was destroyed, and so remand to state court was required at that time. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added). The district court's failure to remand and instead its decision to maintain Priddy and Susman as nondiverse defendants deprived the district court of subject-matter jurisdiction to enter its judgment below.

Neither the parties nor the district court followed this proper course of action, however, and instead the district court simply proceeded to adjudicate the summary-judgment motion on the merits. We are now faced with Curry's appeal from that summary-judgment motion, and we must decide whether we may reach the merits of this appeal despite the fact that the district court lacked subject-matter jurisdiction below. Acknowledging the lack of complete diversity at oral argument after our prodding, U.S. Bulk Transport concedes **\*542** the lack of subject-matter jurisdiction. In response, U.S. Bulk Transport encourages us to dismiss Curry's claims against Priddy and Susman pursuant to *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989), so that we may retain jurisdiction over this appeal and reach the merits of the district court's grant of summary judgment to U.S. Bulk Transport.

In *Newman–Green,* plaintiff Newman–Green, Inc. initially filed suit in federal district court alleging state-law contract claims against multiple defendants and invoking diversity jurisdiction because all of the defendants were believed to be diverse from Newman–Green. When Newman–Green appealed the district court's partial grant of summary judgment to the Seventh Circuit, the Court of Appeals drew the parties' attention to the fact that one of the defendants in the suit, who was domiciled in Venezuela but a U.S. citizen, had no domicile in the United States, rendering him "stateless" for the purposes of § 1332(a)(3) and ineligible for § 1332(a)(2), and thereby destroying complete diversity between the plaintiff and defendants. *Id.* at 828–29. When faced with the possibility that its entire suit might be dismissed from the federal courts for lack of subject-matter jurisdiction, Newman–Green filed a motion with the Seventh Circuit requesting to amend its complaint to drop the single nondiverse defendant from the law suit so that the federal courts could maintain subject-matter jurisdiction. *Id.* at 829. The original panel of the Seventh Circuit granted Newman–Green's motion and dismissed the nondiverse defendant with prejudice, but the en banc court reversed, holding that the Court of Appeals could not cure the lack of subject-matter jurisdiction retroactively by dismissing the nondiverse defendant. *Newman–Green, Inc. v. Alfonzo–Larrain,* 832 F.2d 417 (7th Cir.1987), *rev'd en banc,* 854 F.2d 916 (7th Cir.1988). Upon review, the Supreme Court reversed the en banc court, holding that federal "courts of appeals have the authority to dismiss a dispensable nondiverse party" to cure a jurisdictional defect. *Newman–Green,* 490 U.S. at 837, 109 S.Ct. 2218. The Supreme Court emphasized, however, "that such authority should be exercised sparingly." *Id. Newman–*

*Green* counsels that "[i]n each case, the appellate court should carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation." *Id.* at 837–38, 109 S.Ct. 2218. The Supreme Court went on to conclude that granting Newman–Green's motion to dismiss the nondiverse defendant in that instance was appropriate because the dismissal would not harm any of the parties. *Id.* at 838, 109 S.Ct. 2218.

U.S. Bulk Transport's argument that we should exercise our authority under *Newman–Green* in these circumstances is misplaced. [4] *Newman–Green* is fundamentally different from the circumstances of this case because *Newman–Green* did not involve removal, but was rather an instance where the plaintiff originally filed suit in federal court and wished to resolve its dispute in that forum. Importantly, in *Newman–Green* it was the plaintiff, who wished to be in federal court all along, who sought to dismiss the nondiverse defendant that it had identified, when the problem with complete diversity became apparent. In *Casas Office Machines,* the plaintiff Casas asked the First Circuit to **\*543** exercise its authority under *Newman–Green* to dismiss the nondiverse substituted defendants without prejudice when the jurisdiction problem was perceived on appeal. *Casas Office Mach.,* 42 F.3d at 675. Thus, in both *Newman–Green* and *Casas Office Machines,* the triggering factor for the appellate authority to dismiss the nondiverse defendants to cure the lack of jurisdiction was the *plaintiff's* motion to enable it to proceed with the case against diverse defendants in federal court. This is a far cry from the circumstances in this case. Here Curry wished to bring this lawsuit against all three defendants in state court. As the plaintiff, Curry is the master of his complaint, *see Loftis v. United Parcel Service, Inc.,* 342 F.3d 509, 514–15 (6th Cir.2003), and he properly chose to pursue his tort claims against the truck driver, the truck owner, and U.S. Bulk Transport in one lawsuit in state court. Curry was then brought into federal court on U.S. Bulk Transport's notice of removal. There is no dispute that Curry subsequently engaged in a good-faith effort to identify Priddy and Susman at the earliest possible time, but that he was unable to do so until the discovery process was underway in the U.S. district court.

In these circumstances, we conclude that curing the lack of subject-matter jurisdiction against Curry's wishes by dismissing Priddy and Susman would harm Curry, as it would force him to be bound by a judgment that the district court lacked jurisdiction to issue. Dismissing Priddy and Susman while retaining in federal court Curry's action against U.S. Bulk Transport may also force Curry to initiate a second lawsuit in state court in order to pursue his claims against Priddy and Susman, requiring him to expend further resources than if he had been able to pursue his claims against all defendants in his single state-court suit as he originally desired. In addition, a two-suit resolution of Curry's grievances would be an utter waste of judicial resources. We recognize the seeming waste of judicial resources in our inability to reach the merits of this appeal, but this is due to the failure of the parties and the district court to take the proper action—to remand the suit to state court—when the nondiverse defendants were named. For these reasons, we conclude that this case is not the proper instance in which to exercise our limited authority under *Newman–Green.* We remand the action to the district court so that the district court can remand the action in its entirety to the state court for lack of federal-court subject-matter jurisdiction, thereby permitting the plaintiff to pursue resolution of this dispute in one lawsuit in state court.

### III. CONCLUSION

Because complete diversity was destroyed when Priddy and Susman were identified as nondiverse defendants, the district court lacked subject-matter jurisdiction. We **REMAND** the action to the district court with instructions to remand the action to the state court from which this action was removed.

### All Citations

462 F.3d 536, 2006 Fed.App. 0341P

---

**Footnotes**

2006 Fed.App. 0341P

\*     The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

1     Curry had incorrectly identified U.S. Bulk Transport as "U.S. Bulk Transfer" in the caption of his initial complaint, J.A. at 17–21, and so Curry filed his first amended complaint with this correction on June 15, 2004. J.A. at 10.

2     Curry notes in his appellate brief that Priddy and Susman are citizens of Ohio, and that despite this amended complaint, "the case was not remanded to State Court." Appellant Br. at 1. Defendants remained entirely silent on the jurisdiction issue and did not include a statement of jurisdiction in their appellate brief.

3     The First Circuit's reasoning in *American Fiber & Finishing* is particularly helpful here. In this instance, as there, "it is nose-on-the-face plain that [Curry] could not originally have brought suit in federal court against [Priddy and Susman], since citizens of [Ohio] would have been perched on both sides of the litigation. When it amended its complaint to configure its suit in precisely that fashion, complete diversity was destroyed just as surely as if [Curry] had sued [Priddy and Susman] in the first instance." *Amer. Fiber & Finishing,* 362 F.3d at 141. "The extra step [of the amended complaint] obfuscates, but does not alter, the jurisdictional calculus." *Id.*

4     It is not disputed that Priddy and Susman, as joint tortfeasors, are dispensable parties to this litigation. *See Casas Office Mach.,* 42 F.3d at 677 (stating that "[i]t is well-established that joint tortfeasors and co-conspirators are generally not indispensable parties" because of joint and several liability).

---

**End of Document**        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 3075752

2010 WL 3075752
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. Michigan,
Southern Division.

Carlla LAMPTON and Bruce Lampton, Plaintiffs,
v.
COLUMBIA SUSSEX CORPORATION d/b/a
Crowne Plaza Detroit and John Doe., Defendants.

No. 10–CV–11922.
|
Aug. 5, 2010.

**Attorneys and Law Firms**

Frederic M. Rosen, Steffani E. Chocron, Law Offices of Frederic M. Rosen, Detroit, MI, for Plaintiffs.

Denise L. Mitcham, Conklin, Benham, Bingham Farms, MI, for Defendant.

*ORDER GRANTING PLAINTIFFS' MOTION
TO COMPEL [DOC. # 9], CONDITIONALLY
GRANTING PLAINTIFFS' MOTION FOR REMAND
[DOC. # 2], AND GRANTING PLAINTIFFS
LEAVE TO FILE AN AMENDED COMPLAINT*

GEORGE CARAM STEEH, District Judge.

I. Introduction

**\*1** Plaintiffs, Carlla and Bruce Lampton, initiated the instant action in Circuit Court for the County of Wayne, State of Michigan. Defendant, Columbia Sussex Corporation d/b/a Crowne Plaza Detroit, caused this action to be removed to this court based on diversity jurisdiction under 28 U.S.C. § 1332. Before the court is plaintiffs' motion to remand the instant case to the circuit court by reason of lack of diversity pursuant to 28 U.S.C. § 1447(c) and plaintiffs' motion to compel defendant to produce full and complete answers to interrogatories.

II. Factual Background

Plaintiff Carlla Lampton alleges that on March 1, 2008, she slipped and fell on a loose, missing, or otherwise defective portion of a dance floor at the Crowne Plaza Detroit ("Crowne Plaza") hotel facility, which is owned by defendant Columbia Sussex Corporation ("Columbia Sussex"). Plaintiff claims that as a result of this fall, she sustained severe bodily injuries and experienced a great degree of pain, emotional damage, and possible aggravation of dormant conditions. Additionally, she incurred substantial financial outlay for medical expenses. Both Columbia Sussex Corporation and an unknown John Doe were named as defendants in the complaint. The complaint describes defendant John Doe as "the direct agent, servant and/or employee of Defendant Columbia Sussex Corporation," specifically the general manager of Crowne Plaza. The complaint further alleges that John Doe had direct responsibility for the condition and maintenance of the hotel premises; moreover, plaintiffs impute knowledge of the defect in the dance floor to both John Doe and Columbia Sussex.

Defendant asserts that this court has original jurisdiction over the instant matter because there is complete diversity among the parties. While the plaintiffs are citizens and residents of Wayne County, Michigan, Columbia Sussex is a citizen of Kentucky. Columbia Sussex asserts that a John Doe defendant is treated as a fictitious person, and, as such, John Doe's citizenship should be disregarded in determining the court's jurisdiction over this case pursuant to 28 U.S.C. 1441(a).

Plaintiffs, however, allege upon information and belief that John Doe is a Michigan resident based on the fact that his work is in Detroit, Michigan; therefore, his inclusion in the action destroys diversity. Plaintiffs further contend that the John Doe defendant is not a fictitious person and that despite good faith efforts to discover his true identity, Columbia Sussex has withheld this requested information.

III. Analysis

1. Motion to Compel

On May 28, 2010, plaintiffs served defendant Columbia Sussex with a list of interrogatories, two of which requested "the name of the General Manager of the Crowne Plaza—Detroit on or about March 1, 2008" and "the name and address of John Doe on or about March 1, 2008." Plaintiffs allege that as of July 23, 2010, Columbia Sussex has failed to provide

answers to these interrogatories, thus preventing them from amending the complaint to substitute a real party in place of the John Doe. Indeed, given the thirty day interrogatory deadline, these answers were due on June 28, 2010. At the hearing, the court granted plaintiffs' motion to compel and directed defendant to confirm the name and residence of John Doe. Defense counsel, in response, did name the general manager and confirm he is a resident of Michigan.

### 2. Standard of Review

**\*2** To establish original jurisdiction through diversity, the matter in controversy must exceed the sum of $75,000 and must be between citizens of different states. 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity; that is, no defendant may be a citizen of the same state as any plaintiff. *See Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

Under 28 U.S.C. § 1441(b), an action brought in state court is removable "only if none of the parties in interest properly joined as defendants is a citizen of the state in which such action is brought." As such, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The court should resolve questions in favor of remand to state court, as the burden of proving proper federal jurisdiction is on the removing party, here, the defendant. *See Gafford v. Gen. Elec. Co.,* 997 F.2d 150, 155 (6th Cir.1993). Whether defendant has the right to remove this case must be determined from the allegations in the complaint at the time of removal. *Holloway v. Pacific Indem. Co.,* 422 F.Supp. 1036, 1037 (E.D.Mich.1976) (citing *Pullman Co. v. Jenkins,* 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939)).

### 3. Diversity Jurisdiction

To determine whether diversity jurisdiction exists among parties, 28 U.S.C. § 1441 specifies:

> Except as otherwise expressly provided by Act of Congress, any civil action brought into a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district or division embracing the place where such action is pending.

> *For purposes of removal under this chapter ... the citizenship of defendants sued under fictitious names shall be disregarded.*

(emphasis added). The Sixth Circuit has consistently relied on a strict interpretation of the language of this statute, disregarding fictitious defendants' citizenships without reference to any other factors. *See, e.g., Curry v. U.S. Bulk Transp., Inc.,* 462 F.3d 536, 539 (6th Cir.2006); *Alexander v. Elec. Data Sys. Corp.,* 13 F.3d 940, 948 (6th Cir.1994); *Farris v. JP Morgan Chase Bank,* No. 09–CV–14094–DT, 2010 U.S. Dist. 6991, \*2–\*3 (E.D.Mich. Jan. 28, 2010).

In *Alexander,* the plaintiff brought suit against a diverse corporation and a nondiverse Jane Doe, the corporation's personnel manager, for alleged employment discrimination. 13 F.3d at 941. The complaint did not allege any specific actions taken or the roles played by the defendants, but rather asserted that "defendants have engaged in unlawful employment practices." *Id.* at 942. The court denied plaintiff's motion to remove the case to state court in part because:

> It [was] clear that 'Jane Doe' is a fictitious name; no such real person was ever named, and plaintiff never identified the alleged person who was 'EDS' Personnel Manager in Michigan in [sic] within the time period covered.' *Section 1441(a)* compels that this 'named' defendant be disregarded for purposes of diversity jurisdiction.

**\*3** *Id.* at 948.

*Curry* further expands upon *Alexander* and finds that where the non-diverse defendants are John Does, it is proper to disregard their citizenship for the purpose of determining diversity jurisdiction, *see* 462 F.3d at 539; however, when the complaint is amended to substitute real, non-diverse defendants for the John Does, the previous diversity jurisdiction is destroyed, and the federal court must dismiss the case, *see id.* at 539–40. That is, while plaintiffs naming a John Doe as a defendant may not have their case remanded for lack of diversity jurisdiction, they have leave

2010 WL 3075752

to seek remand after amending their complaint to substitute a non-fictitious defendant. *See id.* at 539–40.

Other district courts within the Sixth Circuit have adopted a more liberal interpretation of 28 U.S.C. § 1441. *See, e.g., Musial v. PTC Alliance Corp.,* No. 5:08CV–45R, 2008 U.S. Dist. LEXIS 48856, at *12, 2008 WL 2559300 (W.D.Ky. June 25, 2008); *Zuellig v. Marathon Oil Co.,* 648 F.Supp. 473, 474 (E.D.Mich.1986). These cases rely on the standard set forth by the Northern District of California in *Asher v. Pacific Power & Light Co.,* 249 F.Supp. 671, 676 (N.D.Cal.1965).

> [W]hether or not the joinder of the resident "doe" will destroy diversity depends on the degree of specificity with which the complaint charges the "doe" with actionable conduct.... If ... the allegations ... [are] so general that they give no clue as to whom they could pertain, then the parties ... should be disregarded for the purposes of determining diversity jurisdiction.

*Id.* at 676 (citation omitted). This standard was later clarified such that "Doe defendants should be disregarded in determining diversity of citizenship where the charging allegations of the complaint are directed at all the defendants jointly, with no attempt to designate the specific role or identity of any of the Doe defendants." *Jong v. General Motors Corp.,* 359 F.Supp. 223, 227 (N.D.Cal.1973) (citations omitted).

This standard of adequate complaint specificity in describing a John Doe was directly rejected in a more expansive interpretation of 28 U.S.C. § 1441. *Holloway,* 422 F.Supp. at 1041. In its holding, *Holloway* established the standard that "[a]s long as a proper cause of action is stated against a resident Doe defendant, the case should not be removed until the plaintiff dismisses the action against that defendant, or actually commences trial without having served him." *Id.* However, although *Holloway* was frequently cited and followed in the Sixth Circuit during the 1980s, *see, e.g.,*

*Dewyer v. Gaudette Mach. Movers,* No. 88–CV–72709–DT, 1988 U.S. Dist. LEXIS 18237, at *2 (E.D.Mich. Aug. 11, 1988); *Mullins v. King's Entm't Co.,* 663 F.Supp. 61, 63 (E.D.Mich.1987), and has never been overturned, it has not been cited or followed in more recent decisions.

Despite these differing standards, the court is constrained to follow the precedent set forth by the Sixth Circuit in *Alexander.* The language of 28 U.S.C. 1441(a) clearly and unambiguously states that the court may not consider the citizenship of a fictitious defendant for the purpose of determining whether to remand a case founded upon diversity jurisdiction. As noted in *Alexander,* the court finds that a John Doe defendant is indeed a fictitious person, and so his citizenship shall be disregarded for the purpose of determining diversity jurisdiction. This result is generally appropriate, especially when a fictitious defendant's citizenship is not definitely known.

**\*4** The legal landscape of this case changed significantly during oral argument, however. Defendants' counsel, in response to the court's question, identified the general manager by name and confirmed his Michigan residency. As such, plaintiffs may amend their complaint to substitute this real party for the John Doe defendant; once this individual is properly joined, the court's diversity jurisdiction will be destroyed and a remand order will be proper pursuant to 28 U.S.C. § 1447(c). *See Curry,* 462 F.3d at 539–40.

### IV. Conclusion

Accordingly, for the reasons stated on the record and in this Order, plaintiffs' motion to compel is GRANTED. Plaintiffs' motion for remand to the Wayne County Circuit Court is CONDITIONALLY GRANTED, contingent on plaintiffs amending their complaint to substitute the named party for the fictitious John Doe and alleging his Michigan residency. Lastly, plaintiffs are GRANTED leave to file an amended complaint within seven (7) days of the issuance of this Order.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3075752

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:25-cv-13037-BRM-APP ECF No. 12-1, PageID.324 Filed 10/10/25 Page 26 of 36

Roman Catholic Archdiocese of San Juan, Puerto Rico v..., 589 U.S. 57 (2020)

140 S.Ct. 696, 206 L.Ed.2d 1, 2020 Employee Benefits Cas. 65,393...

KeyCite Yellow Flag

Declined to Extend by    In re Patel,   11th Cir.(Ga.),   July 8, 2025

140 S.Ct. 696
Supreme Court of the United States.

ROMAN CATHOLIC ARCHDIOCESE
OF SAN JUAN, PUERTO RICO
v.
Yali ACEVEDO FELICIANO, et al.

No. 18-921.
|
Decided February 24, 2020

**Synopsis**

**Background:** Active and retired employees of Catholic schools brought action against Roman Catholic and Apostolic Church of Puerto Rico, Archdiocese of San Juan, Superintendent of Catholic Schools of the Archdiocese of San Juan, three Catholic schools, and the trust for employees' pension plan, alleging that the trust had terminated the pension plan, thereby eliminating the employees' pension benefits. The Puerto Rico Court of First Instance denied a preliminary injunction. Employees appealed. The Puerto Rico Court of Appeals affirmed. Employees appealed. The Puerto Rico Supreme Court reversed and remanded. Archdiocese removed the case to federal court, based on trust having filed a Chapter 11 bankruptcy proceeding. The Court of First Instance ordered the church to make payments in accordance with pension plan, required the church to deposit money in a court account, and required sheriff to seize assets of church and its dependencies. Appeal was taken. The Puerto Rico Court of Appeals reversed. Employees appealed. The Puerto Rico Supreme Court, Estrella Martinez, J., 200 D.P.R. 458, reversed, reinstating the preliminary injunction. Archdiocese petitioned for writ of certiorari.

**Holdings:** Upon granting certiorari, the Supreme Court held that:

upon filing of notice of removal, the state trial court lost jurisdiction;

archdiocese did not restore state court's jurisdiction by filing motions in that court; and

federal district court's nunc pro tunc order did not restore state court's jurisdiction.

Certiorari granted; vacated and remanded.

Justice Alito filed a concurring opinion, in which Justice Thomas joined.

**Procedural Posture(s):** Petition for Discretionary Review; On Appeal; Motion for Preliminary Injunction.

**\*\*697** ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF PUERTO RICO

**Opinion**

PER CURIAM.

**\*58** In 1979, the Office of the Superintendent of Catholic Schools of the Archdiocese of San Juan created a trust to administer a pension plan for employees of Catholic schools, aptly named the Pension Plan for Employees of Catholic Schools Trust (Trust). Among the participating schools **\*59** were Perpetuo Socorro Academy, San Ignacio de Loyola Academy, and San Jose Academy.

In 2016, active and retired employees of the academies filed complaints in the Puerto Rico Court of First Instance alleging that the Trust had terminated the plan, eliminating the employees' pension benefits. The employees named as a defendant the "Roman Catholic and Apostolic Church of Puerto Rico," which the employees claimed was a legal entity with supervisory authority over all Catholic institutions in Puerto Rico. App. to Pet. for Cert. 58–59, 152–153 (emphasis deleted). [1] The employees also named as defendants the Archdiocese of San Juan, the Superintendent, the three academies, and the Trust.

[1]    The petition for a writ of certiorari includes certified translations of the opinions, originally in Spanish, of the Puerto Rico courts. We cite the certified translations.

The Court of First Instance, in an order affirmed by the Puerto Rico Court of Appeals, denied a preliminary injunction requiring the payment of benefits, but the Puerto Rico Supreme Court reversed. The **\*\*698** Supreme Court concluded that "if the Trust did not have the necessary funds to meet its obligations, the participating employers would be obligated to pay." *Id.*, at 3. But, because "there was a dispute

Case 2:25-cv-13037-BRM-APP ECF No. 12-1, PageID.325 Filed 10/10/25 Page 27 of 36

Roman Catholic Archdiocese of San Juan, Puerto Rico v..., 589 U.S. 57 (2020)

140 S.Ct. 696, 206 L.Ed.2d 1, 2020 Employee Benefits Cas. 65,393...

as to which defendants in the case had legal personalities," the Supreme Court remanded the case to the Court of First Instance to "determine who would be responsible for continuing paying the pensions, pursuant to the preliminary injunction." *Ibid.*

The Court of First Instance determined that the "Roman Catholic and Apostolic Church in Puerto Rico" was the only defendant with separate legal personhood. *Id.*, at 239–240. The Court held such personhood existed by virtue of the Treaty of Paris of 1898, through which Spain ceded Puerto Rico to the United States. The Court found that the Archdiocese of San Juan, the Superintendent, and the academies **\*60** each constituted a "division or dependency" of the Church, because those entities were not separately incorporated. *Ibid.*

As a result, the Court of First Instance ordered the "Roman Catholic and Apostolic Church in Puerto Rico" to make payments to the employees in accordance with the pension plan. *Id.*, at 241. Ten days later, the Court issued a second order requiring the Church to deposit $4.7 million in a court account within 24 hours. The next day, the Court issued a third order, requiring the sheriff to "seize assets and moneys of ... the Holy Roman Catholic and Apostolic Church, and any of its dependencies, that are located in Puerto Rico." *Id.*, at 223.

The Puerto Rico Court of Appeals reversed. It held that the "Roman Catholic and Apostolic Church in Puerto Rico" was a "legally nonexistent entity." *Id.*, at 136. But, the Court concluded, the Archdiocese of San Juan and the Perpetuo Socorro Academy could be ordered to make contribution payments. The Archdiocese enjoyed separate legal personhood as the effective successor to the Roman Catholic Church in Puerto Rico, the entity recognized by the Treaty of Paris. Perpetuo Socorro Academy likewise constituted a separate legal person because it had been incorporated in accordance with Puerto Rico law, even though its registration was not active in 2016, when the orders were issued. The two remaining academies, San Ignacio Academy and San Jose Academy, were part of the same legal entity as "their respective parishes," but the employees could not obtain relief against the parishes because they had not been named as defendants. *Id.*, at 167.

The Puerto Rico Supreme Court again reversed, reinstating the preliminary injunction issued by the trial court. The Supreme Court first held that the "relationship between Spain, the Catholic Church, and Puerto Rico is *sui generis*, given

the particularities of its development and historical context." *Id.*, at 5. The Court explained that the Treaty **\*61** of Paris recognized the "legal personality" of "the Catholic Church" in Puerto Rico. *Id.*, at 6.

The Puerto Rico Supreme Court further observed that "each entity created that operates separately and with a certain degree of autonomy from the Catholic Church is in reality a fragment of only one entity that possesses legal personality," at least where the entities have not "independently submitt[ed] to an ordinary incorporation process." *Id.*, at 13–14 (emphasis deleted). "In other words," the Court continued, "the entities created as a result of any internal configuration of the Catholic Church," such as the Archdiocese of San Juan, "are not automatically equivalent to the formation of entities with different and separate legal personalities in the field of Civil Law," but "are merely indivisible fragments of the legal personality that the **\*\*699** Catholic Church has." *Ibid.* And Perpetuo Socorro Academy was not a registered corporation in 2016, when the plan was terminated. *Id.*, at 16. Therefore, under the Court's reasoning, the only defendant with separate legal personality, and the only entity that could be ordered to pay the employees' pensions, was the "Roman Catholic and Apostolic Church in Puerto Rico." *Id.*, at 2.

Two Justices dissented. Justice Rodríguez Rodríguez criticized the majority for "inappropriately interfer[ing] with the operation of the Catholic Church by imposing on it a legal personality that it does not hold in the field of private law." *Id.*, at 29. In her view, the Archdiocese of San Juan and the five other dioceses in Puerto Rico each has its own "independent legal personality." *Id.*, at 52. Justice Colón Pérez likewise determined that, under Puerto Rico law, "each Diocese and the Archdiocese ha[s its] own legal personality" and that no separate "legal personality" called the "Roman Catholic and Apostolic Church" exists. *Id.*, at 80, 90 (emphasis deleted).

The Archdiocese petitioned this Court for a writ of certiorari. The Archdiocese argues that the Free Exercise and **\*62** Establishment Clauses of the First Amendment require courts to defer to "the Church's own views on how the Church is structured." Pet. for Cert. 1. Thus, in this case, the courts must follow the Church's lead in recognizing the separate legal personalities of each diocese and parish in Puerto Rico. The Archdiocese claims that the Puerto Rico Supreme Court decision violated the "religious autonomy doctrine," which provides: "[W]henever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has

Case 2:25-cv-13037-BRM-APP ECF No. 12-1, PageID.326 Filed 10/10/25 Page 28 of 36

Roman Catholic Archdiocese of San Juan, Puerto Rico v..., 589 U.S. 57 (2020)

140 S.Ct. 696, 206 L.Ed.2d 1, 2020 Employee Benefits Cas. 65,393...

been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them." *Id.*, at 20 (quoting *Watson v. Jones*, 13 Wall. 679, 727, 20 L.Ed. 666 (1872)).

We called for the Solicitor General's views on the petition. 588 U. S. —— (2019). The Solicitor General argues that we need not "reach [the Archdiocese's] broader theory in order to properly dispose of this case," because a different error warrants vacatur and remand. Brief for United States as *Amicus Curiae* on Pet. for Cert. 13–14 (Brief for United States). Instead of citing "any neutral rule of Puerto Rico law governing corporations, incorporated or unincorporated associations, veil-piercing, joint-and-several liability, or vicarious liability," the Puerto Rico Supreme Court "relied on a special presumption—seemingly applicable only to the Catholic Church ... —that all Catholic entities on the Island are 'merely indivisible fragments of the legal personality that the Catholic Church has.' " *Id.*, at 9 (quoting App. to Pet. for Cert. 14). The Solicitor General contends that the Puerto Rico Supreme Court thus violated the fundamental tenet of the Free Exercise Clause that a government may not "single out an individual religious denomination or religious belief for discriminatory treatment." Brief for United States 8 (citing *Murphy v. Collier*, 587 U. S. ——, 139 S.Ct. 1475, 203 L.Ed.2d 633 (2019); **\*63** *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 524–525, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993); *Fowler v. Rhode Island*, 345 U.S. 67, 69, 73 S.Ct. 526, 97 L.Ed. 828 (1953)).

We do not reach either argument because we find that the Court of First Instance lacked jurisdiction to issue the payment and seizure orders. On February 6, 2018, after the Supreme Court of Puerto Rico remanded the case to the Court of First Instance to determine the appropriate parties to the preliminary injunction, **\*\*700** the Archdiocese removed the case to the United States District Court for the District of Puerto Rico. Notice of Removal in *Acevedo-Feliciano* v. *Holy Catholic Church*, No. 3:18–cv–01060. The Archdiocese argued that the Trust had filed for Chapter 11 bankruptcy and that this litigation was sufficiently related to the bankruptcy to give rise to federal jurisdiction. *Id.*, at 5–6 (citing 28 U. S. C. §§ 1334(b), 1452). The Bankruptcy Court dismissed the Trust's bankruptcy proceeding on March 13, 2018. Opinion and Order Granting Motions to Dismiss in *In re Catholic Schools Employee Pension Trust*, No. 18–00108. The Puerto Rico Court of First Instance issued the relevant payment and seizure orders on March 16, March 26, and March 27. App. to Pet. for Cert. 224, 227, 241. But the District Court

did not remand the case to the Puerto Rico Court of First Instance until nearly five months later, on August 20, 2018. Order Granting Motion to Remand in *Acevedo-Feliciano* v. *Archdiocese of San Juan*, No. 3:18–cv–01060.

Once a notice of removal is filed, "the State court shall proceed no further unless and until the case is remanded." 28 U. S. C. § 1446(d). [2] The state court "los[es] all jurisdiction over the case, and, being without jurisdiction, its subsequent **\*64** proceedings and judgment [are] not ... simply erroneous, but absolutely void." *Kern v. Huidekoper*, 103 U.S. 485, 493, 26 L.Ed. 354 (1881). "Every order thereafter made in that court [is] *coram non judice*," meaning "not before a judge." *Steamship Co.* v. *Tugman*, 106 U.S. 118, 122, 1 S.Ct. 58, 27 L.Ed. 87 (1882); Black's Law Dictionary 426 (11th ed. 2019). See also 14C C. Wright, A. Miller, E. Cooper, J. Steinman, & M. Kane, Federal Practice and Procedure § 3736, pp. 727–729 (2018).

[2]      "The laws of the United States relating to ... removal of causes ... as between the courts of the United States and the courts of the several States shall govern in such matters and proceedings as between the United States District Court for the District of Puerto Rico and the courts of Puerto Rico." 48 U. S. C. § 864.

The Court of First Instance issued its payment and seizure orders after the proceeding was removed to federal district court, but before the federal court remanded the proceeding back to the Puerto Rico court. At that time, the Court of First Instance had no jurisdiction over the proceeding. The orders are therefore void.

We note two possible rejoinders. First, the Puerto Rico Court of Appeals suggested that the Archdiocese consented to the Court of First Instance's jurisdiction by filing motions in that court after removal. But we have held that a removing party's right to a federal forum becomes "fixed" upon filing of a notice of removal, and that if the removing party's "right to removal [is] ignored by the State court," the party may "make defence in that tribunal in every mode recognized by the laws of the State, without forfeiting or impairing, in the slightest degree, its right to a trial" in federal court. *Steamship Co.*, 106 U.S. at 122–123, 1 S.Ct. 58. Such actions do not "restore[ ]" "the jurisdiction of the State court." *Id.*, at 122, 1 S.Ct. 58. So, too, the Archdiocese's motions did not restore jurisdiction to the Court of First Instance.

Case 2:25-cv-13037-BRM-APP ECF No. 12-1, PageID.327 Filed 10/10/25 Page 29 of 36
Roman Catholic Archdiocese of San Juan, Puerto Rico v...., 589 U.S. 57 (2020)
140 S.Ct. 696, 206 L.Ed.2d 1, 2020 Employee Benefits Cas. 65,393...

Second, the District Court remanded the case to the Court of First Instance by way of a *nunc pro tunc* judgment stating that the order "shall be effective as of March 13, 2018," the date that the Trust's bankruptcy proceeding was dismissed. *Nunc Pro Tunc* Judgt. in No. 3:18–cv–01060 (Aug. 8, 2018).

**\*65** Federal courts may issue *nunc pro tunc* orders, or "now for then" orders, Black's Law Dictionary, at 1287, to "reflect[ **\*\*701** ] the reality" of what has already occurred, *Missouri v. Jenkins*, 495 U.S. 33, 49, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990). "Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court." *Cuebas y Arredondo v. Cuebas y Arredondo*, 223 U.S. 376, 390, 32 S.Ct. 277, 56 L.Ed. 476 (1912).

Put colorfully, "[n]unc pro tunc orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact." *United States v. Gillespie*, 666 F.Supp. 1137, 1139 (ND Ill. 1987). Put plainly, the court "cannot make the record what it is not." *Jenkins*, 495 U.S. at 49, 110 S.Ct. 1651.

Nothing occurred in the District Court case on March 13, 2018. See Order Granting Motion to Remand in No. 3:18–cv–01060 (noting, on August 20, 2018, that the motion is "hereby" granted and ordering judgment "accordingly"). March 13 was when the Bankruptcy Court dismissed the Trust's proceeding and thus the day that the Archdiocese's argument for federal jurisdiction lost its persuasive force. Even so, the case remained in federal court until that court, on August 20, reached a decision about the motion to remand that was pending before it. The Court of First Instance's actions in the interim, including the payment and seizure orders, are void.

The Solicitor General agrees that the Court of First Instance lacked jurisdiction but argues that this defect does not prevent us from addressing additional errors, including those asserted under the Free Exercise Clause. That may be correct, given that the Puerto Rico courts do not exercise Article III jurisdiction. But we think the preferable course at this point is to remand the case to the Puerto Rico courts to consider how to proceed in light of the jurisdictional defect we have identified.

The petition for certiorari and the motions for leave to file briefs *amici curiae* are granted, the judgment of the **\*66** Puerto Rico Supreme Court is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Justice ALITO, with whom Justice THOMAS joins, concurring.

I join the opinion of the Court but write separately to note other important issues that may arise on remand.

First, the decision of the Supreme Court of Puerto Rico is based on an erroneous interpretation of this Court's old decision in *Municipality of Ponce v. Roman Catholic Apostolic Church in Porto Rico*, 210 U.S. 296, 323–324, 28 S.Ct. 737, 52 L.Ed. 1068 (1908). The main question decided by the Supreme Court of Puerto Rico below was whether the Catholic Church in Puerto Rico is a single entity for civil law purposes or whether any subdivisions, such as dioceses or parishes, or affiliated entities, such as schools and trusts, are separate entities for those purposes. The Supreme Court of Puerto Rico held that *Ponce* decided that in Puerto Rico the Catholic Church is a single entity for purposes of civil liability. That was incorrect.

The question in *Ponce* was whether the Catholic Church or the municipality of Ponce held title to two churches that had been built and maintained during the Spanish colonial era using both private and public funds. The Church sued to establish that it had title, and the municipality argued that the Church could not bring suit because it was not a juridical person. 210 U.S. at 308–309, 28 S.Ct. 737. After considering the Treaty of Paris, Dec. 10, 1898, 30 Stat. 1754, which ended the Spanish-American War, this Court simply held that the Church was a juridical person and thus **\*\*702** could bring suit. See 210 U.S. at 310–311, 323–324, 28 S.Ct. 737. This Court did not hold that the Church is a single entity for purposes of civil liability, but that is how the Supreme Court of Puerto Rico interpreted the decision. That court quoted *Ponce*'s statement that " '[t]he Roman Catholic Church has been recognized as **\*67** possessing legal personality by the treaty of Paris, and its property rights solemnly safeguarded.' " App. to Pet. for Cert. 7 (quoting 210 U.S. at 323–324, 28 S.Ct. 737). Immediately thereafter it wrote: "Despite this, the intermediate appellate court understood that each division of the Catholic Church in Puerto Rico equals the creation of a different and separate legal entity and did not recognize that legal personality of the Catholic Church." App. to Pet. for Cert. 8.

This is an incorrect interpretation of this Court's decision, and it would have been appropriate for us to reverse the decision

Roman Catholic Archdiocese of San Juan, Puerto Rico v...., 589 U.S. 57 (2020)

140 S.Ct. 696, 206 L.Ed.2d 1, 2020 Employee Benefits Cas. 65,393...

below on that ground were it not for the jurisdictional issue that the Court addresses. The assets that may be reached by civil plaintiffs based on claims regarding conduct by entities and individuals affiliated in some way with the Catholic Church (or any other religious body) is a difficult and important issue, but at least one thing is clear: This Court's old decision in *Ponce* did not address that question.

Second, as the Solicitor General notes, the Free Exercise Clause of the First Amendment at a minimum demands that all jurisdictions use neutral rules in determining whether particular entities that are associated in some way with a religious body may be held responsible for debts incurred by other associated entities. See Brief for United States as *Amicus Curiae* on Pet. for Cert. 8–13.

Beyond this lurk more difficult questions, including (1) the degree to which the First Amendment permits civil authorities to question a religious body's own understanding of its structure and the relationship between associated entities and (2) whether, and if so to what degree, the First Amendment places limits on rules on civil liability that seriously threaten the right of Americans to the free exercise of religion as members of a religious body.

The Court does not reach these issues because of our jurisdictional holding. But they are questions that may well merit our review.

### All Citations

589 U.S. 57, 140 S.Ct. 696, 206 L.Ed.2d 1, 2020 Employee Benefits Cas. 65,393, 20 Cal. Daily Op. Serv. 1429, 2020 Daily Journal D.A.R. 1391, 28 Fla. L. Weekly Fed. S 26

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 5298284
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Northern Division.

Jose ROSAS, Plaintiff,

v.

MICHIGAN DEPARTMENT OF HEALTH
& HUMAN SERVICES, et al., Defendants.

Case No. 1:24-cv-11400
|
Signed November 20, 2024

**Attorneys and Law Firms**

Jose Rosas, Atlanta, MI, Pro Se.

Bryan William Beach, Terracina Echols, Neil Anthony Giovanatti, Michigan Department of Attorney General, Health, Education and Family Services Division, Lansing, MI, for Defendants Michigan Department of Health & Human Services, Child Protective Services, Lori Budnik, Maelyn Morang.

Cristie A. VanMassenhove, Kane, Funk & Poch, PC, Alpena, MI, for Defendant Jena Miranda.

**REPORT AND RECOMMENDATION TO
VACATE STATE COURT DECISIONS
ENTERED AFTER REMOVAL AND TO
REMAND CASE TO STATE COURT FOR
FURTHER PROCEEDINGS AND TO DENY AS
MOOT PLAINTIFF'S MOTION TO COMPEL
PROPER NOTICE OF REMOVAL (ECF No. 30)**

Patricia T. Morris, United States Magistrate Judge

**I. RECOMMENDATION**

 **\*1** For the following reasons, **IT IS RECOMMENDED** that this case be **REMANDED** to Montmorency County Circuit Court for further proceedings. Further, **IT IS RECOMMENDED** that any Montmorency County Circuit Court decisions entered post-removal, but pre-remand be **VACATED.**

If adopted, Plaintiff Jose Rosas' motion to compel proper notice of removal (ECF No. 30) would be **DENIED AS MOOT**. The remaining motions, namely Lori Budnik, Child

Protective Services, Michigan Department of Health & Human Services, and Maelyn Morang's (hereinafter, "State Defendants") joint motion to dismiss (ECF No. 5) and Rosas' second motion for leave to file an amended complaint (ECF No. 19), should be considered by the state court following remand.

**II. REPORT**

 **A. INTRODUCTION**

Plaintiff Jose Rosas, proceeding *pro se*, originally filed this action in Montmorency County Circuit Court. (ECF No. 1-1, PageID.8, 10). Rosas brought claims against various individuals and entities all of whom he alleges were involved in the removal of his child from his home and his eventual loss of custody. (*See id.*). State Defendants removed the case to this Court on the basis of federal-question jurisdiction. (ECF No. 1). Defendant Jena Miranda has now appeared through counsel and filed an answer (ECF No. 32); however, Montmorency County, Atlanta Public School, Krzystan, and Hissock have not yet taken any action.

Rosas recently filed a motion to compel proper notice of removal (ECF No. 30) to which State Defendants timely responded (ECF No. 33). Rosas did not file a reply. In reviewing Rosas' motion, State Defendants' response, and the state court docket for this case, [1] the Undersigned discovered that state court proceedings continued following removal. This was improper under federal law, even though State Defendants are aware of the ongoing proceedings, they appear to take no issue with them, and did not inform this Court about them until directed to respond to the instant motion.

[1]  https://www.montmorencycourts.com/case-search (last visited Nov. 14, 2024).

For the reasons explained below, the Undersigned **RECOMMENDS** that this case be **REMANDED** to Montmorency County Circuit Court and that Rosas' motion to compel proper notice of removal be **DENIED AS MOOT**. Further, any Montmorency County Circuit Court decisions entered post-removal, but pre-remand should be **VACATED**.

 **B. LEGAL STANDARD**

The removal of cases from state to federal courts is governed by federal statutes. Generally,

any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). District courts have original jurisdiction in civil cases between diverse parties "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," *id.* § 1332(a), and in civil cases "arising under the Constitution, laws, or treaties of the United States[,]" *id.* § 1331.

**\*2** In a case involving multiple defendants, "all defendants who have been *properly joined and served* must join in or consent to the removal of the action." *Id.* § 1446(b)(2)(A) (emphasis added). After filing the notice of removal in the district court, "the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the *State court shall proceed no further* unless and until the case is remanded." *Id.* § 1446(d) (emphasis added).

### C. ANALYSIS

As will be further explained, Montmorency County Circuit Court did not abide by 28 U.S.C. § 1446(d). This appears to be a rare occurrence despite the frequency with which cases are removed to federal courts from state courts throughout the country.

State Defendants removed this case to federal court before the state court docket reflected that service had been effectuated on any other defendant. (ECF No. 33, PageID.301–02 (referencing ECF No. 33-1)). Since that time, appearances have been entered in the state court on behalf of all Defendants other than Miranda, namely Montmorency County, Atlanta Public Schools, and two individuals employed by Atlanta Public Schools (Betty Krzystan and Tawyn Hisscock). Rosas now moves to compel proper notice of removal, entry of an order to show cause, and for the imposition of sanctions. (ECF No. 30).

In his motion, Rosas argues that State Defendants did not follow proper removal procedure. Specifically, he asserts that State Defendants failed to notify their co-defendants that the case had been removed. (*Id.* at PageID.275–76).

In response, State Defendants explain that they removed the case before any other defendant had appeared in state court, and that they properly served the notice of removal on Montmorency County Circuit Court, which was later docketed. (ECF No. 33, PageID.301–03). State Defendants also summarize the state court proceedings post-removal as follows:

> Separately, in the state court proceeding[s], the Atlanta Public School Defendants moved for summary disposition, which was granted on September 9, 2024. Montmorency County also moved for summary disposition and a hearing is scheduled for October 14, 2024. Accordingly, the claims against the Local Defendants continue to be litigated and were (or will soon be) dismissed.

(ECF No. 33, PageID.302 (internal record citations omitted)).

Ultimately, neither Rosas nor State Defendants correctly identify the procedural issue in this case. Rosas' motion misplaces the blame for the continuation of state court proceedings on State Defendants' failure to notify the state court and co-defendants of removal. Meanwhile, State Defendants appear to have misunderstood the effect of removal to federal court on unserved co-defendants.

By all appearances, State Defendants abided by the removal procedures codified by 28 U.S.C. § 1446. State Defendants filed the notice of removal in this Court on May 24, 2024. (ECF No. 1). And as explained in their response,

> [a]t the time removal was filed, State Defendants were unaware of any other Defendants appearing. The docket for the state court case indicates counsel

2024 WL 5298284

for Defendant Montmorency County appeared on May 20, 2024—though this appearance did not appear on the public docket until after May 24, 2024 when State Defendants filed their Notice of Removal.

(ECF No. 33, PageID.302 n.1 (internal record citation omitted)). The notice of removal was filed on the state court docket on May 28, 2024. However, the docket also reflects that the court clerk only "transferred" the case as to State Defendants. This was improper.

**\*3** When a case is removed,

[t]he entire case is transferred to federal court. That is, the removal of a case from state court to federal court effects a transfer of the entire action, including all the parties and all the claims, to the federal court. Upon the filing of a sufficient removal petition, the state court's jurisdiction immediately and totally ceases, and that of the federal court immediately attaches, and after such removal only the federal court can restore jurisdiction to the state court.

Where the removal of a cause is effected on the application of one of several defendants, the other defendant or defendants are brought into the federal court. Even claims against a fraudulently joined defendant are removed.

77 C.J.S. *Removal of Cases* § 148 (2024) (internal footnotes omitted) (collecting cases). When faced with instances where state court proceedings have continued following removal,

numerous [federal] courts have ruled that any post-removal proceedings in the state court are considered coram non judice and will be vacated by the federal court, even if the removal subsequently is found to have been improper and the case is remanded back to that state court. Indeed, the federal court to which a case has been removed has the power to restrain further proceedings in the state court.

14C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Jurisdiction* § 3736 (rev. 4th ed. 2024) (internal footnotes omitted) (collecting cases).

That said, "[a] state-court defendant also may lose or waive the right to remove a case to federal court through activity or inactivity." 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Jurisdiction* § 3721 (rev. 4th ed. 2024). Federal courts have reached different and often conflicting conclusions when grappling with the issue of what constitutes waiver as illustrated by the following summation:

Waiver may occur, for example, if the defendant files an untimely or otherwise defective removal notice. Alternatively, waiver may be found if the defendant takes some substantial offensive or defensive action in the state-court action, indicating a willingness to litigate in the state tribunal, before filing a notice of removal with the federal court. Federal courts sometimes have found waivers by defendants who asserted a counterclaim or engaged in pretrial discovery in state court. They have refused to find a waiver, however, when the defendant's participation in the state action was not substantial or was dictated by the rules of that court or a state-court judge. Courts have also declined to find waiver when the defendant litigates in state court as a result of the plaintiff's obfuscation of the presence of a basis for removal. Unfortunately, a perusal of the decided cases shows that the line between what will constitute waiver of the right to remove and what will not is far from clear.

*Id.* (internal footnotes omitted) (collecting cases).

The most analogous case to this one appears to be *Direct Mortgage Corporation v. Keirtec, Inc.*, 478 F. Supp. 2d 1339 (D. Utah 2007). That case involved claims against multiple

2024 WL 5298284

defendants, including Landsafe. *Id.* at 1340. Landsafe timely removed the case to federal court on the basis of diversity jurisdiction. *Id.* However,

> **\*4** after Landsafe filed this notice of removal, the other parties continued to take action in state court. Two defendants filed answers, two defendants filed motions to dismiss, and one attorney even withdrew from the case. In addition, the state court itself took action on this case, granting a motion to dismiss one of the defendants.

*Id.* After months passed without the filing of any documents, the district court entered a show cause order. *Id.* It was in a response to that order that the district court first "learn[ed] of the continuing action before the state court." *Id.* The district court noted that, "Landsafe, the removing party, neglected to inform the court that the parties and the state court judge were continuing to take substantive action in the state court venue. Without such notice, this court had no way of learning of these state court proceedings." *Id.*

After discovering that state proceedings had continued following removal, the district court *sua sponte* undertook the following waiver analysis:

In *Akin v. Ashland Chemical Co.*, [156 F.3d 1030 (10th Cir. 1998),] the Tenth Circuit found the plaintiffs had consented to jurisdiction in an inverse, yet analogous, situation. In *Akin*, the plaintiffs had filed a toxic tort claim in state court, and the defendants properly removed the case to federal court. After the federal court upheld the validity of the removal, the plaintiffs voluntarily amended their complaint and asserted a cause of action in federal court. By amending their complaint, the Tenth Circuit found, the plaintiffs lost the right to contest removal. Instead, the plaintiffs had impliedly consented to federal jurisdiction. According to the Tenth Circuit, parties "cannot voluntarily invoke, then disavow, federal jurisdiction." The Tenth Circuit cited the problems that arise when parties simultaneously try to reap benefits from both state and federal jurisdiction, rather than wholly committing to one:

> [O]nce [plaintiff] decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint he was bound to remain there. Otherwise he would be in a position where if he won his case on [the] merits in federal court he could claim to have raised the federal question in his amended complaint voluntarily, and if he lost he could claim to have raised it involuntarily and to be entitled to start over in state court. He "cannot be permitted to invoke the jurisdiction of the federal court, and then disclaim it when he loses."

While the posture of the case at hand varies from *Akin*, the underlying principles are the same. Landsafe, as the removing party, had the burden to establish this court's jurisdiction. But after Landsafe removed to this court, it continued to take advantage of the actions in state court. Landsafe, unlike this court, received notice when two defendants filed answers after the notice of removal had been filed in state court. Landsafe received notice when two defendants filed motions to dismiss. Landsafe received notice when the state court judge granted a motion to dismiss. But rather than questioning the state court's continuing jurisdiction or notifying this court that the state court action continued to proceed as if the case had never been removed, Landsafe stood silent. By doing so, Landsafe effectively consented to the state court's jurisdiction.

**\*5** A finding to the contrary would allow Landsafe, just like the plaintiffs in *Akin*, to potentially reap simultaneous benefits from both state and federal court. By failing to advise this court that action was continuing at the state court level after the removal, Landsafe has essentially tried to "play both sides of the fence." Landsafe was able to sit by and observe the state court proceedings, gain insight into the plaintiff's and co-defendants' claims, and watch the other parties utilize their resources. Moreover, Landsafe stood silent while a state court expended time handling at least one motion. Thus, in this case, as in *Akin*, Landsafe cannot have it both ways. If the state court had made rulings unfavorable to Landsafe, Landsafe certainly would have objected. Landsafe cannot quietly and idly let the state court action proceed, while waiting to see if a ruling of the state court will affect it favorably.

To hold otherwise would be to undermine principles underlying the removal doctrine. The procedural devices of removal and remand are designed to ensure only one court

Case 2:25-cv-13037-BRM-APP   ECF No. 12-1, PageID.333   Filed 10/10/25   Page 35 of 36
Rosas v. Michigan Department of Health & Human Services, Slip Copy (2024)
2024 WL 5298284

exercises jurisdiction over a case at any given time. This ultimately prevents inconsistent rulings and duplicitous work, and it preserves judicial and party resources. If this court were to exercise jurisdiction in this case, it might invalidate the substantive actions the state court judge took in this case after Landsafe filed a notice of removal, thereby requiring duplicitous work from the parties. The state court's dismissal of one defendant might have to be reconsidered. In short, to allow the case to proceed here would constitute a waste of judicial resources, undermine the finality of state court rulings, and possibly lead to inconsistent decisions.

*Id.* at 1340–42.

The Undersigned is persuaded by the district court's reasoning in this case. Here, State Defendants like Landsafe said nothing while the state court considered and ruled on their co-defendants' motions. If Rosas had not alerted the Court to something being amiss with the removal process, the Court may never have known about the substantial amount of litigation that had occurred in Montmorency County Circuit Court. While State Defendants may have properly removed this matter, they did nothing to ensure that the removal was properly effected in the state court. Instead, they appear to have said nothing in either court as parallel proceedings continued.

The Undersigned thus suggests that through their inaction, State Defendants have waived their right to remove this case to federal court. This result also respects the decisions of the other parties in this case. State court was where Rosas chose to file this action and where several defendants have engaged in motion practice without seeking removal to federal court.

A finding of waiver necessitates a remand of this case to Montmorency County Circuit Court and the denial as moot of Rosas' motion to compel proper notice of removal. The only remaining issue is the effect of the remand on the state court proceedings that occurred during the period where proceedings were taking place in both courts.

In *Direct Mortgage*, the district court sought "[t]o avoid invalidating the actions the parties and the state court took in the case after the removal," and thus "remand[ed] *nunc pro tunc*—retroactive to October 5, 2006, the date Landsafe filed its notice of removal." *Id.* at 1342. While there are benefits to this approach, it would prejudice Rosas who was understandably confused about which court had jurisdiction post-removal. Accordingly, the Undersigned

instead recommends that when remanding the case, the Court also vacate the state court's decisions as coram non judice. *See* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Jurisdiction* § 3736 (rev. 4th ed. 2024) ("[N]umerous [federal] courts have ruled that any post-removal proceedings in the state court are considered coram non judice and will be vacated by the federal court, even if the removal subsequently is found to have been improper and the case is remanded back to that state court.") (collecting cases); *see also Resolution Trust Corp. v. Bayside Devs.*, 817 F. Supp. 822, 825 (N.D. Cal. 1993) (vacating a state appellate court decision in a case that was removed to federal court post-appeal under "the special removal powers given by Congress to the [Resolution Trust Corporation]" while "recogniz[ing] that it [wa]s intruding into state law and procedure, but conclud[ing] that it [wa]s required to do so"), *aff'd* 43 F.3d 1230 (9th Cir. 1994, amended Jan. 20, 1995). Vacating the state court's decisions will ensure that Rosas can respond and be heard on any motions to dismiss or for summary disposition now that the procedural confusion has been resolved.

### D. CONCLUSION

**\*6** For the reasons stated above, **IT IS RECOMMENDED** that this case be **REMANDED** to Montmorency County Circuit Court for further proceedings. Further, **IT IS RECOMMENDED** that any Montmorency County Circuit Court decisions entered post-removal, but pre-remand be **VACATED.**

If adopted, Rosas' motion to compel proper notice of removal (ECF No. 30) would be **DENIED AS MOOT**. The remaining motions should be considered by the state court following remand.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections,

**Rosas v. Michigan Department of Health & Human Services, Slip Copy (2024)**

2024 WL 5298284

but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

**All Citations**

Slip Copy, 2024 WL 5298284

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.