# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ANTONIO LAVON MANNING,

    Plaintiff,

v.

TEA DATING ADVICE, INC. d/b/a TEA, JOHN/JANE DOES 1-20, individuals,

    Defendants.

Case No.: 2:25-cv-13037-BRM-APP

Hon.: Brandy R. McMillion
Magistrate Judge Anthony P. Patti

## DEFENDANT TEA DATING ADVICE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# ARGUMENT

## A. Section 230 Bars Plaintiff's Claims Against Tea

### 1. Plaintiff's Claims Are Barred by Sixth Circuit Precedent

Plaintiff[1] sued Tea for publishing and not removing posts. His claims are barred by Sixth Circuit precedent because "§ 230 bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or altar content.'" *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).

### 2. Tea Does Not Have an Independent Duty to Plaintiff

Plaintiff cannot save his claims by reframing them. (ECF 11 at 7-8, PageID.226-27.) As a start, the Court should ignore all of Plaintiff's arguments concerning the five statements ("Statements") in Tea's terms of service ("Terms") (ECF 11 at 7-8, PageID.226-27) because they are not pled in his Complaint. *See, e.g.*, *Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 584 n.2 (E.D. Mich. 2014) (even in *pro se* cases, "the complaint may not be amended by the briefs in opposition to a motion to dismiss").[2] However, even if added, any amended complaint would still fail because the Statements do not obligate Tea to remove the posts.

---

[1] Capitalized terms not defined herein shall have the meaning set forth in Defendant's Motion to Dismiss. (ECF 8.)
[2] The main cases and other authority are attached as **Exhibit A**.

First, the Terms do not apply to Plaintiff, a non-user of the Tea App. (ECF 11-2 at 1, PageID.266.) Moreover, while Tea requires its users to confirm they are providing truthful content about men, Tea "assumes no responsibility regarding the accuracy" of posts, "makes no warranty whatsoever that any of this information is accurate and does not guarantee that it will verify the statements of its users." (*Id.* § 9, PageID.269.) None of the Statements require Tea to review or remove posts. Statement 1 merely prohibits users from posting personal details and states that users should refrain from submitting libelous, defamatory, etc. statements. (*Id.* § 7, PageID.269.) Statement 2 provides that Tea "*may* monitor or review" users' posts and "*reserve[s] the right*" to delete, edit, etc. posts in its "sole discretion." (*Id.* § 9, PageID.269 (emphasis added).) Statement 3 states that Tea "*may*" use AI in some capacity. (*Id.* § 8, PageID.269 (emphasis added).) Statement 4 outlines a procedure for submitting copyright claims (inapplicable here) pursuant to the Digital Millenium Copyright Act ("DMCA"), (*compare id.* § 10, PageID.269 *with* ECF 11-3, PageID.277). Finally, Statement 5 gives Tea the right (but not obligation) to perform certain acts with posts and expressly states that Tea "does not endorse" any posts. (ECF 11-2, § 7, PageID.269.) In sum, none apply to Plaintiff (a non-user) and they cannot form a basis for his claims.

Plaintiff's reliance on *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (ECF 11 at 15, PageID.234) is misplaced because the

key element of Barnes' claims—a promise to take down the content—is missing. Plaintiff also **fabricated every Barnes quote** in his opposition. But *Barnes* supports Tea's arguments not Plaintiff's because it bars claims predicated on a defendant's "status or conduct as 'publisher or speaker.'" (ECF 8 at 8, PageID.126 (quoting *Barnes*, 570 F.3d at 1102).):

> Under this theory, Barnes' cause of action would evade the reach of section 230(c) entirely because it treats Yahoo not as a publisher, but rather as one who undertook to perform a service and did it negligently. We are not persuaded. As we implied above, a plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory from defamation to negligence. Nor can he or she escape section 230(c) by labeling as a "negligent undertaking" an action that is quintessentially that of a publisher.

*Barnes*, 570 F.3d at 1102-03. The court's promissory estoppel decision also does not support Plaintiff's argument because he did not assert a promissory estoppel claim. (*See generally* ECF 3, Compl.) Nor could he because he concedes Tea never agreed to take down the posts. (ECF 11 at 11, PageID.230.) Moreover, the court found that "a general monitoring policy" which is more than Plaintiff alleges "does not suffice for contract liability." *Barnes*, 570 F.3d at 1108. Finally, contrary to Plaintiff's argument and practice, (ECF 11 at 16, PageID.235) Barnes complied with Yahoo's policy, *Barnes*, 570 F.3d at 1098 (Barnes submitted information "[i]n accordance with Yahoo['s] policy"). For example, his letter (ECF 11-2, PageID.277) did not (and could not) include the required attestation or copyright registration number.

3

### 3. Plaintiff's Claims Are Outside Section 230's Intellectual Property Carveout

Contrary to Plaintiff's argument (ECF 11 at 20, PageID.239), Section 230 bars state intellectual property claims. Indeed, while Plaintiff relies exclusively on *Perfect 10, Inc. v. CCBill LLC*, that court "construe[d] the term 'intellectual property' to mean 'federal intellectual property.'" 488 F.3d 1102, 1119 (9th Cir. 2007). Fundamentally, however, Plaintiff's argument that his name and likeness claim is an intellectual property claim (ECF 11 at 30-32, PageID.249-51) is also incorrect. *See Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019) (limiting intellectual property exception to "claims pertaining to an established intellectual property right under federal law, like those inherent in a patent, copyright, or trademark").

### 4. Tea Did Not Materially Contribute to the Alleged Illegality

Tea also did not materially contribute to any alleged illegality. Under Sixth Circuit precedent, refusing to take down posts is not material contribution. *See, e.g.*, *Jones*, 755 F.3d at 416 (internet service providers could not "be found to have materially contributed to the defamatory content through the decision not to remove the posts"). Since Plaintiff does not (and cannot) allege that Tea edited the posts, its hypothetical right to do so (ECF 11 at 22, PageID.241) is irrelevant. Additionally, "prohibiting specific categories of content" (ECF 11 at 23, PageID.242) is not material contribution because Section 230 expressly immunizes those efforts. 47

4

U.S.C. § 230(c)(2)(A) (No ISPs "shall be held liable" for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers obscene . . . harassing, or otherwise objectionable . . ."); *see also Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 761 (9th Cir. 2024) (Section 230 "immunizes providers of interactive computer services" for actions that comply with Section 230(c)(2)(A)). This safe harbor protects Tea even if its "moderation or filtering" system was "imperfect." *Haymore v. Amazon.com, Inc.*, 2024 WL 4825253, at *3 (E.D. Cal. Nov. 19, 2024), *report and recommendation adopted,* 2025 WL 565499 (E.D. Cal. Feb. 20, 2025) (internal quotations omitted). Finally, Plaintiff's citation to *Nemet Cheverlet, Ltd. v. Consumeraffairs.com, Inc.* confirms that he cannot evade dismissal because he hopes discovery will reveal a basis for his claim. 591 F.3d 250, 260 (4th Cir. 2009) (affirming dismissal because the "well-pled allegations allow us to infer no more than 'the mere possibility' that Consumeraffairs.com was responsible for the creation or development of the allegedly defamatory content . . .").

### B. Plaintiff Likewise Fails to State any Claim Against Tea

#### 1. Plaintiff Still Fails to Allege a Negligent Misrepresentation Claim

Plaintiff still fails to satisfy Rule 9(b) because he *still* does not identify the posts his claims rest on. (ECF 11-1 at 1, PageID.257.) This claim should also be dismissed because, as explained above, none of the Statements are false or actionable

5

to Plaintiff a non-user of the Tea App. *See Whitfield v. Bank of Am.*, 2013 WL 1506588, at *8 (E.D. Mich. Apr. 12, 2013) (dismissing negligent misrepresentation claim because plaintiff failed to allege "any facts showing that [d]efendants failed to use reasonable care when providing [p]laintiffs with information."). Again, Plaintiff's after the fact one day "reliance" on Statements not directed at him does not change the analysis. (ECF 11 at 10-11, PageID.229-30.)

### 2. Plaintiff Cannot Save his MCPA Claim

Plaintiff's MCPA claim does not satisfy Rule 9(b) because he fails to identify the posts. It also fails because Tea did not provide him (not a consumer) goods or services and he did not adequately allege any of the elements of fraud. (ECF 8 at 17, PageID.135); *see also In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011) (dismissing plaintiff's MCPA claim "for failure to allege an intent to deceive and for failure to plead fraud with the requisite particularity.") The MCPA scope is limited to consumers, not **any** "person." *DIRECTV, Inc. v. Shouldice*, 2003 WL 23200255, at *4 (W.D. Mich. Oct. 20, 2003) (no standing if individual is not a consumer, competitor complaining of false and misleading statements to consumer, or seeks "to assert, as a non-consumer, any type of an interest that would further the interest of or protect consumers.").

### 3. Plaintiff Cannot Salvage His Name and Likeness Claim

The Court should reject Plaintiff's arguments because he has pleaded no facts

6

showing that he has a pecuniary interest in his identity or that Tea commercially exploited it. Plaintiff's references to being a business owner are irrelevant because he does not allege that any of the posts referenced his business or that Tea attempted to or did benefit from associating itself with his business. *Eggleston v. Daniels*, 2016 WL 4363013, at *10 (E.D. Mich. Aug. 16, 2016) (dismissing claim because plaintiff failed to "'demonstrate that there is value in associating an item of commerce with her identity' in that 'a merchant would gain significant commercial value by associating an article of commerce with her.'" (quoting *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 624 (6th Cir. 2000).)). Plaintiff's vague speculation that Tea benefits from engagement with sensationalist posts is also insufficient to show that Tea commercially exploited his identity. *See Putman v. Hills & Dales Gen. Hosp.*, 2024 WL 3844739, at *6 (Mich. Ct. App. Aug. 15, 2024) (affirming summary disposition of name and likeness claim because "conjecture and speculation" that the defendant benefited from use of the plaintiff's identity was insufficient). This is particularly implausible because Plaintiff sued the day after the posts were made.

Dated: October 24, 2025               */s/ Katherine L. Pullen*
                                                                    Katherine L. Pullen (P74511)
                                                                    WARNER NORCROSS + JUDD LLP
                                                                    2715 Woodward Avenue, Suite 300
                                                                    Detroit, Michigan 48201
                                                                    (313) 546-6000
                                                                    kpullen@wnj.com

## PROOF OF SERVICE

Katherine L. Pullen states that on October 24, 2025, she caused to be filed the foregoing document and this Certificate of Service via the court's electronic filing system, which will send notification of such filing to all parties on record.

I declare that the above statement is true to the best of my knowledge, information and belief.

/s/ Katherine L. Pullen
Katherine L. Pullen
